**CITY NAT. BANK & TRUST CO. OF CHICAGO v. SECURITIES AND EXCHANGE COMMISSION et al.**

No. 8106.

Circuit Court of Appeals, Seventh Circuit.

March 5, 1943.

Wm. G. Burns, and Daniel C. Smith, both of Chicago, Ill., for petitioner.

M. F. Cosgrove, Balfour S. Jeffrey, and Clayton E. Kline, all of Topeka, Kan., Benjamin Schenker, of New York City, John F. Davis, Homer Kripke, Roger S. Foster, Counsel, Public Utilities Division, and David K. Kadane, all of Philadelphia, Pa., Theodore L. Thau, of Washington, D. C., and Aaron Levy, of New York City, for respondents.

Before MAJOR, KERNER, and MINTON, Circuit Judges.

MAJOR, Circuit Judge.

This is a petition to review an order of the Securities and Exchange Commission, entered July 10, 1942, under the Public Utility Holding Company Act of 1935 (hereinafter called "the Act"), 49 Stat. 803, 15 U.S.C.A. § 79a et seq. The order approved an application (called Application No. 2) filed by the respondent, North American Light and Power Company (called Light and Power), for authority to retire its outstanding publicly held de-

bentures, for which petitioner was a successor trustee.

Light and Power, incorporated in 1924 under the laws of Delaware, is a subsidiary of the North American Company (called North American), both of which are holding companies registered under the Act. North American owns 85% of Light and Power's common stock, 43% of its preferred stock and 62.4% of its debentures.

The proceeding was instituted by the Commission on December 2, 1941 to determine among other things, whether under Sec. 11(b) (2) of the Act an order should be entered requiring the liquidation and dissolution of Light and Power, and the distribution of its assets to its security holders in accordance with a fair and equitable plan. On December 30, 1941, the Commission, in conformity with its findings and opinion that the continued existence of Light and Power was in violation of the Act and that liquidation and dissolution were necessary to comply therewith, entered its order that Light and Power be liquidated and its existence terminated. Light and Power was directed to proceed with due diligence to submit to the Commission a plan or plans for its prompt liquidation and the termination of its existence in a manner consistent with the provisions of the Act. (The period within which this order could be reviewed has expired. Sec. 24(a) of the Act.)

Among the applications filed by Light and Power for approval of steps necessary to carry out the required liquidation was Application No. 2, upon which the order under review was predicated. Of the outstanding debentures, the principal amount of $3,376,500 was held by the public and $5,623,500 held by North American (the parent of Light and Power). The application proposed the retirement of the former by payment of the principal amount of such debentures with interest accrued to July 1, 1942, but without payment of any premium.[1] It was not proposed to pay off the debentures held by North American at the same time for the stated reason that questions had been raised as to the right of North American to be paid on the same basis as the public holders. The Commission, in its order approving the application, found that immediate retirement of the publicly held debentures was practical and necessary to effect the provisions of Sec. 11(b) (2) and to enable Light and Power to liquidate and dissolve in accordance with the order of December 30, 1941, and was fair and equitable to the persons affected thereby. Interest was allowed upon the debentures until August 21, 1942 and thereafter the debentureholders were paid amounts equal to the principal plus interest accrued to that date.

The primary question for decision is whether the order authorizing the retirement by Light and Power of its publicly held debentures, without the payment of premium, is valid and lawful. It is the contention of the Commission that payment of a premium was required only in the event of their voluntary retirement, that such requirement is not applicable to the instant situation because the retirement was involuntary—necessitated by the Commission's order requiring liquidation and dissolution of the corporation. In this connection, it is also contended that the purpose of the debenture agreement was frustrated and rendered impossible of attainment by the supervening mandate of the Act and the Commission's order thereunder. On the other hand, petitioner contends that the debentureholders had a contractual right to the redemption premium, of which they could not be legally deprived. In this connection, it is argued that the retirement of the debentures was the voluntary act of Light and Power, but that even if involuntary, they could not be deprived of the benefit of the redemption provision. To do so, it is urged, is violative of Sec. 26(c)[2] of the Act, and the Fifth Amendment of the United States Constitution.

■ In the beginning, we think it may be assumed that an order of the Commission which impaired or destroyed a property right fixed by contract would violate Sec. 26(c) of the Act. Furthermore, such

---

[1] The application provided that debentureholders accepting principal and accrued interest would not be deemed to have waived the redemption premium if it should be determined upon review of the Commissions' order that they were entitled to such premium.

[2] This section provides that "nothing in this title [chapter] shall be construed (1) to affect the validity of any loan or extension of credit * * * made or of any lien created prior or subsequent to the enactment of this title [chapter], unless at the time of the making of such loan or extension of credit * * * [Circumstances enumerated not here material]."

an order would not be "fair and equitable to the persons affected by such plan," as required by Sec. 11(e) of the Act. Case v. Los Angeles Lumber Products Co., 308 U. S. 106, 114, 60 S.Ct. 1, 84 L.Ed. 110; Consolidated Rock Co. v. DuBois, 312 U.S. 510, 61 S.Ct. 675, 85 L.Ed. 982. Petitioner's contention in this respect, however, carries little, if any, force, because he must, as we view the matter, stand or fall on the issue as to whether Light and Power was obligated by contract to pay a premium on redemption under the circumstances with which it was confronted.

We shall first consider petitioner's contention that the Commission erroneously determined that the dissolution was the result of a "compulsory liquidation by Congressional mandate." In support thereof, certain acts and events which transpired prior to the Commission's liquidation order of December 30, 1941 are relied upon. Briefly, the record discloses that during a hearing in a proceeding instituted by the Commission against North American (parent company), it developed that a continuation of the then existing status of Light and Power was doubtful. On May 9, 1941, the directors of Light and Power adopted a resolution, proposing to the stockholders that the corporation be dissolved. It is admitted that this action was influenced by the prospective application of the Act, but it is urged that other factors were determinative. The president of Light and Power by affidavit stated, in effect, that the directors decided there was no economic justification for the continued existence of the company and that it would have been liquidated, irrespective of the Act.

It was decided to dissolve under the Delaware Corporation Law and to liquidate under the direction of a Chancery Court of that state. The stockholders of Light and Power were so notified. It is disclosed that the Commission opposed the proposed liquidation action in the state court, and on June 3, 1941 entered an order prohibiting North American from voting its stock at the proposed dissolution meeting and prohibiting Light and Power from holding the stockholders' meeting. On the following day, the Commission instituted proceedings in the United States District Court of Delaware, seeking to enjoin Light and Power and North American from violating the provisions of its order. It is claimed that dissolution in the state court, except for interference by the Commission, would have been certain inasmuch as North American, which owned sufficient shares to insure passage of the dissolution resolution, had agreed to vote its shares in favor thereof. Further action was held in abeyance until December 2, 1941, when the Commission ordered that a hearing be held on December 22, 1941 for the purpose of considering whether an order should be entered requiring liquidation by Light and Power. Counsel at this hearing stated that the appearance of Light and Power was without prejudice to the dissolution proceeding pending in the Delaware Court. It was at the termination of this hearing that the Commission on December 30, 1941 entered its liquidation order which resulted in the filing on April 30, 1942 by Light and Power of its Application No. 2, seeking authority from the Commission for its proposed plan of liquidation.

Reference to legal textbooks, digests, etc. is convincing that it is difficult to define with exactitude the word "voluntarily." We think it can be safely said that whether an act is voluntarily performed depends not merely on the act of performance but upon the attending circumstances and conditions. Petitioner suggests as analogous to the asserted voluntary action of Light and Power the action of a person subject to the draft who enlists in the military service. Assuming the pertinency of this analogy, we doubt if it is of any benefit to petitioner. It does illustrate, however, that the character of the act depends upon the circumstances under which it is performed. For instance, a person subject to draft who because of age, deferred classification, or other reason has only a remote possibility of being called for service, who nevertheless enlists, could well contend that such enlistment was voluntary action on his part. On the other hand, what can be said of a person subject to draft who enlists at a time when he knows that he is to be called immediately or at an early date? Of course, he would be known as a volunteer, as that term is commonly understood, but would such enlistment be voluntary action on his part? It is possible that it might be, but the circumstances would strongly militate against such a conclusion. If his draft status as determined by law was the thing which caused, induced or prompted the enlistment or substantially contributed thereto, then we think it could not be said that his action was voluntary.

■ So in the instant case, the mere naked acts of the officials of Light and Power with reference to dissolution affords some basis for the assertion that it was a voluntary dissolution. Such acts, however, when considered in connection with the circumstances, are well near stripped of all potency. For some eight years the corporation had existed in a dormant condition, with business activities of such a meager nature as to require the services of only one paid officer and one employee. It is strikingly significant, so we think, that it apparently did not occur to it that its interest lay in dissolution until after the enactment of the Act, nor even then until the Commission had instituted proceedings against North American, its parent corporation, which owned a large part of its bonds and stocks. It is more than a reasonable—it is an inescapable—inference that its sudden impulse to dissolve was born of the knowledge as to the requirements of the law. Faced squarely with what must have been thought to be the inevitable, it was decided to take action which could have as well been taken years before. We think there is no doubt but that the Commission was justified in finding that such action was the result of legal compulsion rather than the voluntary act of the corporation.[3] Such finding is not impaired by the fact that the corporation was agreeable to and acquiesced in that from which there was no escape. Neither is it important that the dissolution proceeding in the state court was stayed by the hand of the Commission. It is unquestioned that the Commission was the designated authority and charged with responsibility of fixing the terms and conditions of dissolution. Furthermore, the acts of the parties in the state court, as well as those prior thereto, are of little consequence because the order now under review was the direct result of the Commission's dissolution mandate contained in its order of December 30, 1941, from which no review was sought and which now must be treated as the operative cause of the liquidation proceeding.

Incidental to and in support of its contention that the dissolution was voluntary, petitioner advances a theory that at the time the order under review was entered there was no prospect of immediate liquidation and no assurance that the same could be completed within any certain time. From this premise, it is argued that action by the corporation toward dissolution at the particular time was its free act, even though it might at some time in the future have been compelled to dissolve. In other words, it is asserted that the Commission's order of December 30, 1941 merely required a certain result and that the manner of arriving at the result remained in the control of the corporation. We suppose in the narrow aspect of the situation that this is true, but viewing the matter as a whole, we think the contention is without merit. After all, Application No. 2 was filed in compliance with the Commission's mandate, and we think it relatively unimportant that as one step in the dissolution the Application contained the request for authority to retire one class of debentures on a certain date rather than some other date a few months later.

Thus we come to the principal question presented, that is, whether the debentureholders had a contract right to the payment of a premium upon redemption of the debentures occasioned by the involuntary act of Light and Power. In other words, did the order of the Commission which required the payment of the debenture principal plus accrued interest without payment of premium violate a contract obligation?

The debentures were issued under an Agreement dated July 1, 1926. They bear interest at the rate of 5½% per annum and mature by their terms on July 1, 1956. Sec. 2 of the Agreement provides: "The debentures * * * shall be redeemable at the option of the company * * * at the principal amounts, together with premiums as follows * * * one and one half percent (1½) of the principal amount of debentures redeemed after July 1, 1941, and on or before July 1, 1946 * * *." Sec. 23 provides: "Such of the debentures * * * as are, by their terms, redeemable before maturity may, at the option of the company, be redeemed at such times, etc."

■ There can be little, if any, doubt, so we think, but that the provisions concerning redemption had to do solely with voluntary action on the part of the corporation. The debentureholder was without

---

[3] Section 79x, 15 U.S.C.A., provides: "The findings of the Commission as to the facts, if supported by substantial evidence, shall be conclusive."

right to require redemption. That was a right accorded to the corporation, to be exercised solely "at the option of the company." It is only upon the exercise of such option that the agreement requires the payment of a premium. Such option lodges in the corporation the discretion to mature the debentures at a date earlier than that otherwise provided. While it is true that the payment of premium was a form of compensation to the debentureholders, nevertheless the redemption provision was for the benefit of the corporation, which could be utilized only at its election. The language plainly indicates that the parties did not contemplate that the redemption provision should be effective upon action by the corporation as a result of the Commission's order. Action under legal compulsion is the antithesis of action by election or "at the option" of the moving party.

Numerous authorities are cited and discussed relating to the doctrine of impossibility of contract performance and the closely allied doctrine of frustration of purpose. In the recent case of New York Trust Co., et al. v. Securities and Exchange Commission, 2 Cir., 131 F.2d 274, the court rejected the contention that the contractual provisions for redemption premium were applicable. The questions presented and decided in that case are almost identical with those of the instant case, and the cases relied upon here were in the main considered. Inasmuch as we agree with both the reasoning and the result in that case, we think no good purpose could be served by a discussion of such cases.

Petitioner's effort to distinguish the New York Trust Co. case rests largely on the contention that the court there had before it a situation wherein the liquidation was involuntary, while here the proceeding was the result of voluntary action. As already shown, the action in the instant case was involuntary; hence this asserted distinction fails. In this connection, we refer to another provision of the debenture agreement which petitioner asserts shows the intention of the parties that the redemption provision was to be given effect upon dissolution, irrespective of the occasion therefor. It is Sec. 50 of Article X, entitled "Successors and Assigns." It provides: "Subject to the proviso hereinafter in this section set forth, it is agreed that if the company shall convey and transfer all or substantially all of its property

* * * in connection with or as a result of which the company shall be dissolved and its affairs shall be wound up or liquidated upon terms providing that cash shall be distributed among stockholders of the company * * * the principal of all debentures issued hereunder and then outstanding shall become immediately due and payable, at their redemption price * * *." We are of the view that there is nothing in the language of this section inconsistent with the interpretation which we have placed upon Sec. 2. It appears that this section was to meet a situation wherein the corporation was being dissolved or liquidated by conveyance or transfer of "all or substantially all of its property as a whole or in parcels" to an assignee or successor concern, rather than by a dissolution as a result of legal compulsion. In any event, there is nothing in the language to indicate that the parties intended that it should be applicable to an involuntary dissolution; in fact, the language indicates to the contrary, and is, therefore, consistent with the language of Sec. 2.

Lastly, petitioner argues that the authorization for the retirement of the publicly held debentures was not "fair and equitable," as required by Sec. 11(e) of the Act. In this connection, it is asserted that after the retirement of the publicly held debentures, in the principal amount of $3,376,500, there remained as outstanding $5,623,500 of debentures, with a continuing obligation to pay interest at 5½%. It is claimed that because of a provision in the debenture relative to partial redemption the debentures redeemed should have been determined by lot. Such provision, no doubt, would have been controlling in case of a voluntary dissolution, but we think it is without effect in the instant situation. Neither do we think that the action of the Commission discriminated against the publicly owned debentures merely from the fact that it did not order the redemption of all debentures at the same time or that some time may elapse before the debentures held by North American are redeemed. We are bound to take note of the fact that in a proceeding such as the instant one, many difficult and complicated questions are calculated to arise, which must be determined before liquidation can be finally completed. Without going into detail, the record discloses that numerous legal questions must be deter-

70

mined, arising as a result of the relation existing between Light and Power and North American, its parent corporation. Until such questions are solved, it is not possible to know the exact status of North American as a holder of debentures, including the basis on which it is entitled to receive payment. We cannot assume that the Commission in its future actions will accord to the debentures held by North American a more favorable status than it has accorded the debentures in suit. In fact, we think we must assume to the contrary.

Light and Power, at the time of the entry of the order under attack, had approximately $4,000,000 of cash available for the calling of its debentures, of which it had some $9,000,000 outstanding. Thus, it had cash in an amount slightly more than sufficient to pay the publicly held debentures. The Commission was confronted with the proposition of authorizing their payment or permitting this cash to lie idle. As we view the situation, the Commission's action was neither unreasonable nor arbitrary. Moreover, the contractual rights of the debentureholders having been recognized and satisfied, they have no cause to complain.

The order of the Commission is affirmed.