## In re AMERICAN GAS & POWER CO.

### Civ. A. No. 419.

District Court, D. Delaware.

June 6, 1944.

David K. Kadane and Myron S. Issacs, both of Philadelphia, Pa., for the SEC.

C. A. Southerland (of Southerland, Berl & Potter), of Wilmington, Del., and Prescott Andrews, of New York City, for American Gas & Power Co.

Charles F. Richards (of Richards, Layton & Finger), of Wilmington, Del., and Melber Chambers (of Sage, Gray, Todd & Sims), of New York City, for New York Trust Co., trustee.

LEAHY, District Judge.

This matter is here on an application of the Securities and Exchange Commission pursuant to Section 11(e) of the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79k(e), to approve a certain plan of American Gas and Power Company as fair, equitable, and appropriate to effectuate the provisions of Section 11(b) of the Act. At the hearing, both the corporation and the Commission supported the plan. The sole objection to the plan will be discussed shortly.

After hearing and an examination of the facts and the law, the court makes the following findings of fact: 1. American Gas and Power Company (herein called "American") is a Delaware corporation, an inhabitant of that state within the meaning of Section 25 of the Public Utility Holding Company Act of 1935, 49 Stat. 803, 15 U.S.C.A. § 79 et seq., and is a registered holding company.

2. Community Gas and Power Company (herein called "Community") is a Delaware corporation, an inhabitant of that state, and is a registered holding company. American is a subsidiary of Community.

3. American Utilities Associates (herein called "Associates") is a Massachusetts trust. All of its securities are owned by American, and it is a subsidiary of American and Community. Associates' assets consist mainly of 58,861.6 shares (96.55%) of the outstanding capital stock, and $1,997 unpaid face amount (1.1%) of the serial non-interest bearing obligations of Lowell Gas Light Company (herein called "Lowell"), which is a Massachusetts corporation and a gas utility company and is a subsidiary of Associates, American and Community.

4. In addition to Associates and Lowell the holding company system of Community and American includes six subsidiary companies of which five are gas utility companies operating in Minnesota, Alabama, Georgia, Florida and Maine. The sixth is a management company all of whose expenses are paid by American.

5. American's interests in Associates consist of $5,910,000 principal amount of notes of which a note in the amount of $4,950,000 is secured by a pledge of 58,199 shares of capital stock of Lowell. As of September 30, 1943, accrued unpaid interest on this obligation amounted to $3,-866,475. American has an accounts receivable item from Associates in the amount of $110,065. The $4,950,000 note of Associates, together with the 58,199

shares of Lowell stock, have been pledged by American with the New York Trust Company (herein called "trustee") as successor trustee under a debenture agreement of American and several supplements thereto.

6. On July 2, 1943 the Commission directed American, pursuant to Section 11(b) (1) of the Act, to dispose of its entire interest in Associates, as well as in all its other subsidiaries, except Minneapolis Gas Light Company. Under the order American was directed, pursuant to Section 11(b) (2) of the Act, to change its capital structure—consisting of secured debentures and common stock—into a capital structure consisting of one class of stock, i.e., common stock. No appeal was taken from the order under Section 24(a) and the time for appeal has expired. American and Community have filed a plan under Section 11 (e) with the Commission. Certain amendments have been added. American is to dispose of its interests in all of its subsidiaries (with the exception of Minneapolis Gas Light Company) to be followed by a reorganization of American whereby it will have one class of stock—common stock—resulting in an ultimate merger of Minneapolis Gas Light Company with American. The Commission has not approved any of the transactions except one part thereof. It has approved the sale by American of its interests in Associates and Lowell. This calls for a modification of the debenture agreement securing American's outstanding debentures. This will take the form of a supplemental agreement.[1] This is the "Plan" before the court.

7. American security holders were notified of the public hearing held by the Commission on the plan. Counsel for the committee representing holders of the secured debentures of American, for Minneapolis Gas Light Company, and for certain security holders of Community, had appeared at prior hearings and had received notice of the hearing on the plan held November 29, 1943. But they did not appear at that hearing. No other person appeared or sought leave to intervene or to be heard. Alpha Association, a Massachusetts trust, and a stranger to the American system has agreed to purchase American's interests in Associates and Lowell. In approving this acquisition the Commission found that the plan, including the modification of the debenture agreement of American, was necessary to effectuate the provisions of Section 11(b) of the Act and fair and equitable to the persons affected. On March 6, 1944 after entering its order dated March 2, 1944, approving the plan, the Commission issued a report to the secured debenture holders of American and copies of

[1] A new provision is to be added to the debenture agreement, as amended, to be known as Section 7(b), which will provide as follows:

"Section 7(b). The Trustee shall release from the lien of the Debenture Agreement and Supplemental Agreements and shall deliver to the Company at any time or from time to time all or any part of the securities of and interest in Birmingham Gas Company, Savannah Gas Company, St. Augustine Gas Company, Bangor Gas Company, Lowell Gas Light Company and American Utilities Associates upon receipt by the Trustee of:

"(i) A written request of the Company signed by its President or a Vice President for such release and delivery:

"(ii) A certified copy of an order of the Securities and Exchange Commission issued under the Public Utility Holding Company Act of 1935 authorizing or approving the sale or other disposition of the securities or interest with respect to which the release is requested, (such order may take the form of approving a plan submitted under Section 11(e) of the Public Utility Holding Company Act of 1935 or may take the form of granting an application for the sale or other disposition of the securities or interest or of permitting a declaration respecting such sale or other disposition to become effective): and

"(iii) The money, securities or interest constituting the consideration to be received by the Company (which shall thereupon become and be a part of the Trust Estate) upon the sale or disposition of the released securities or interest in the event and to the extent that the transaction authorized or approved by the order of the Securities and Exchange Commission mentioned in clause (ii) above provides for or contemplates the receipt by the Company of consideration and for the deposit of such consideration with the Trustee.

"The notice of release of securities from the lien of the Debenture Agreement or any Supplements thereto required by Section 12 of the Supplemental Agreement dated July 18, 1935, shall not be required in the event of releases pursuant to this Section 7(b)."

said report were mailed to all registered holders of such debentures.

8. Under the debenture agreement of American, as it existed prior to the filing of the plan, American could not dispose of its interests in Associates and Lowell without written consent to the release of the securities of those companies pledged with the Trustee.[2] The Commission found that the proposed modification of the debenture agreement which dispensed with the necessity of acquiring such formal consents, was necessary to facilitate compliance with the Commission's order directing American to dispose of its interests in Associates and Lowell.

9. Alpha Association's offer to purchase American's interests in Associates and Lowell contains the condition that American must obtain informal signed postcard consents from holders of at least 66⅔% of the outstanding debentures in American. Such consents have been received.

Discussion. The New York Trust Company, as trustee under the debenture agreement of American, is the sole objector to the plan in this court. The trustee states that the debenture agreement prohibits the release of the pledged stock of Minneapolis Gas Light Company and Lowell without the consent of the holders of 66⅔% in principal amount of outstanding debentures and a certificate of value of an independent engineer as to the worth of the substituted collateral; and in the case of pledged stock of other subsidiaries of American, there may be no release without such a certificate of value. The trustee points out that there is no provision in the agreement permitting the release of Associates' note.

It is part of the plan before the court to amend the agreement by a supplemental writing which will provide that any of the pledged securities held by the trustee shall be released upon receipt by the trustee of (1) a written request from American and (2) a copy of an order of the SEC approving the disposition of the securities to be released. The consideration to be received by American from the sale of any of the pledged securities is to be deposited with the trustee.

The trustee argues that to substitute new provisions for the release of collateral is to subtract protective provisions from the agreement, resulting in a dilution of the lien provided for in that agreement. Reliance is had on Sec. 26(c) of the Act.[3] The trustee's sole authority for its position is City Nat. Bank & Trust Co. v. Securities and Exchange Commission, 7 Cir., 134 F.2d 65. That case is no authority for the trustee. In fact, this court followed the City National Bank & Trust Co. case for the proposition that where the Commission had ordered liquidation of a public utility holding company which had issued bonds which could be matured at the option of the company at a premium before maturity, a plan which provided that bonds might be satisfied prior to maturity without payment of the premium was fair and equitable. See In re North Continent Utilities Corporation, D.C., 54 F.Supp. 527.

 The argument that if Section 26(c) does not protect the lien rights of the debenture holders then the Act itself violates the provisions of the Fifth Amendment of the Constitution is unsound. This argument is based upon the proposition that the order of the Commission impairs a property right fixed by the contract and that the protective provisions found in the agreement are materially weakened under the plan. If this view be sound, Section 26(c) is paramount to Section 11, and it

---

[2] The consents had to be formally acknowledged or accompanied with an affidavit of a witness averring to the authenticity of the execution of such consents.

[3] Section 26(c) provides: "Nothing in this title shall be construed (1) to affect the validity of any loan or extension of credit (or any extension or renewal thereof) made or of any lien created prior or subsequent to the enactment of this title, unless at the time of the making of such loan or extension of credit (or extension or renewal thereof) or the creating of such lien, the person making such loan or extension of credit (or extension or renewal thereof) or acquiring such lien shall have actual knowledge of facts by reason of which the making of such loan or extension of credit (or extension or renewal thereof) or the acquisition of such lien is a violation of the provisions of this title or any rule or regulation thereunder, or (2) to afford a defense to the collection of any debt or obligation or the enforcement of any lien by any person who shall have acquired such debt, obligation, or lien in good faith for value and without actual knowledge of the violation of any provision of this title or any rule or regulation thereunder affecting the legality of such debt, obligation, or lien."

would seem that Congress has unwittingly nullified its own purpose in creating the Act in the first place. Section 11(b) (2) contains the mandate to the Commission to proceed to its business of simplifying public utility holding company corporate structures in order that they may not be unduly or unnecessarily complicated and to be watchful that there will be no unfair and inequitable distribution of voting power among the stockholders of a subject company. In performing its duties, the Commission must see that the persons affected by a change in any particular corporate structure must be treated fairly and equitably. As the Act is a command of the government, contractual relationships must ex necessitate give slightly in the face of such legislation. In Re United Light & Power Co., D.C.Del., 51 F.Supp. 217, affirmed sub. nom. In re Securities and Exchange Comm., 3 Cir., 142 F.2d 411, this court held valid a plan which gave something to common although there was not sufficient to pay the liquidating preferences on the preferred, and this in spite of the charter which provided that the preferred was to be entitled to the stated preferences whether the dissolution or liquidation was voluntary or involuntary. And in the Matter of North Continent Utilities Corp., supra, and in the Matter of Consolidated Electric & Gas Co. D.C.Del., 55 F.Supp. 211, this court indicated that the contract premium of bondholders could be altered where the alteration was fair and equitable. In other words, where the Act is applicable the contracts between the corporation and its security holders and the contracts between the security holders inter sese have come to an end because Congress has so decreed it (Cf. In re Securities and Exchange Comm., 3 Cir., 142 F.2d 411) and the only question for the district court in such cases is whether the particular contract alterations are fair and equitable to those affected thereby.[4]

■ Accordingly, the court rules that the modifications of the debenture agreement are fair and equitable to the persons affected thereby, and that the Commission's approval of the plan does not prejudice any constitutional or legal right of either the trustee or of any debenture holder to object to any future order affecting the lien of the debenture agreement on the remaining collateral or on the proceeds from the sale of such, or which may provide for a distribution of the proceeds of any such sale in any manner other than the deposit thereof with the trustee. Hence, the court makes the following conclusions of law:

1. The court has jurisdiction over the plan and the assets of American.

2. The Commission gave reasonable notice and opportunity for hearing upon the plan before it and before this court.

3. The plan, including the terms and provisions relating to the proposed modifications of the debenture agreement of American, is appropriate to effectuate the provisions of Section 11 and is fair and equitable to the holders of American's debentures within the meaning of Section 11(e).

4. While Section 26 deals with the validity of certain rights of creditors it does not limit either the power of the Commission or this court to modify such rights as an incidence as to what is a fair and equitable plan under Section 11.

---

[4] The protective measures surrounding the release of collateral described in the debenture agreement are in no way diluted by the proposed supplemental agreement. The condition for the consent of 66⅔% of the debenture holders has been met by the requirement of Alpha Association that such consents be had by means of the signed postcard writings. The point that these consents should have donned the formal dress of an acknowledged instrument is without merit in view of the fact that there is an entire absence of any evidence which challenges the authenticity of the postcard consents as not truly reflecting the desires of the debenture holders. In so far as the provision found in the debenture agreement for the filing of a certificate of value by an independent engineer is concerned, obviously the substitution of the Commission's findings of value, or what is fair consideration in connection with the sale of any part of the collateral, is more protective in its function. Not only will the Commission zealously guard the rights of debenture holders by demanding that a fair price be had in connection with such sales, but any party aggrieved has the right to appeal under Sec. 24(a) of the Act to a Circuit Court of Appeals. The debenture holder has not only the protective sanctions of the administrative agency but he has resort to judicial review. Such substantial rights are not given him under the old provisions of the debenture agreement which deal with the certificate of value to be filed by an independent engineer.

5. To the extent necessary to enforce and carry out the terms and provisions of the plan relating to the proposed modification of American's debenture agreement, it is appropriate for this court to take exclusive jurisdiction of American and such of its assets as are pledged as security for the debentures of American; and by order, this court will direct that such terms and provisions of the plan be consummated, i.e., it will direct that American and its officers, directors and agents, and the trustee and its officers, directors and agents, take such steps and perform such acts as may be necessary for the purpose of carrying. out said terms and provisions of the plan, and that American and the trustee execute forthwith a supplemental agreement in the form of Exhibit C to the application of the Commission herein.

6. The plan having been approved by the Commission and by this court in accordance with Section 11(e) of the Act, by order to be entered, all persons will be enjoined from instituting or maintaining any action in any court, or any proceeding before any administrative body, tending to obstruct the execution of the terms and provisions of the plan relating to the proposed modification of the debenture agreement.

A form of order should be submitted granting the present application to enforce and carry out the terms and provisions of the plan relating to the proposed modifications of the debenture agreement between American and the trustee.