**In re COMMUNITY GAS & POWER CO. et al.**

Civ. No. 860.

District Court, D. Delaware.

April 10, 1947.

172

Harry G. Slater, Chief Counsel, Myron S. Isaacs, and Jerome S. Katzin, of Philadelphia, Pa., for Securities & Exchange Commission.

Albridge C. Smith and Prescott R. Andrews (of Humes, Buck, Smith & Stowell), of New York City, and Clarence A. Southerland (of Southerland, Berl & Potter), of Wilmington, Del., for Community Gas & Power Co. and American Gas & Power Co.

Melber Chambers and Edward H. Spencer (of Sage, Gray, Todd & Sims), of New York City, for New York Trust Co. as Debenture Trustee.

George C. Munson (of Townsend, Elliott & Munson), of Philadelphia, Pa., for the Committee for Secured Debentures of American Gas & Power Co.

Solomon E. Star (of McManus & Ernst), of New York City, for certain Debenture Holders of American Gas & Power Co.

Walter J. Fried (of Riegelman, Strasser, Schwarz & Spiegelberg), of New York City, for a Stockholder of American Gas & Power Co.

Seymour Heilbron (of Hays, St. John, Abramson & Schulman), of New York City, for an objecting Common Stockholder of American Gas & Power Co.

Percival E. Jackson, of New York City, for certain Debenture Holders of American Gas & Power Co.

John C. Benson and Chester L. Nichols, of Minneapolis, Minn., for Minneapolis Gas Light Co.

LEAHY, District Judge.

Community Gas and Power Company's and American Gas and Power Company's long attempt to comply with § 11 of the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79k, may be examined by a reference to 13 S.E.C. 532, Holding Company Act Releases Nos. 4395, 4665, 5081, 6436, 6522 and 7131. Only the master facts will be recited here. Both Community and American are registered holding companies. The Securities and Exchange Commission on July 2, 1943 ordered Community to liquidate and American to eliminate its debt securities. A plan was filed which was later modified.

The plan, here as modified, calls for dissolution of Community and the merger of American with Minneapolis Gas Light Company, its remaining operating subsidiary and all of whose common stock is owned by American. American will contribute $3,330,000 cash to Minneapolis for reduction of the latter's debt and for working capital. Minneapolis will transfer its assets to American. American will assume Minneapolis' debt; issue new preferred stock to Minneapolis' present preferred shareholders; and issue 1,090,382 shares of new common stock. 80.16% of this stock will go to American's secured debenture holders—the balance to its common shareholders and holders of warrants. The surviving corporation will be named Minneapolis Gas Company.

There are objections to the plan. The Trustee for the secured debenture holders, as well as two groups representing certain other secured debenture holders, contend the court lacks power to approve any plan under which secured debenture holders are to receive anything but cash; but if such power exists the provisions of the plan whereby debenture holders are to receive the stock of Minneapolis Gas Company are unfair and not appropriate to effect compliance with § 11; and the particular allocation of the stock to the secured debenture holders is not fair and equitable. Certain of the common shareholders of American object to the distribution of stock to the secured debenture holders as not appropriate. Another stockholder of American joins with the company and seeks court approval of the plan. To the features of the plan which provide for the treatment of the senior security holders of Minneapolis, to the relative treatment accorded the 5% and 6% debentures, and to the rela-

tive treatment between the warrant holders and the common shareholders, there is no objection.

The questions for decision are, do the Securities and Exchange Commission and the enforcement court have the power to approve a plan of a solvent holding company where creditors, secured by a pledge of underlying securities, are given such securities instead of cash for the dischargement of the debt; assuming the debenture holders must take stocks, is the distribution here fair and equitable; and, is the plan appropriate in providing for the merger of American with its principal operating subsidiary, Minneapolis Gas Light Company?

1. It cannot be seriously argued that the Commission is here asserting a power to destroy a pledge of collateral of American's secured debentures. In fact, the security behind the debentures is simply American's holdings of common stock in Minneapolis Gas Light Company and cash received from the sale of former subsidiaries and, under the trust indenture, American may use that cash to buy additional common stock of Minneapolis. At best, then, the secured debenture holders may look to their participation in the common stock of Minneapolis.

Both the Act[1] and legislative history[2] disclose that Congress envisaged that proceedings for enforcement might arise whereby it would be necessary to have alteration of a pledge[3] or a satisfaction of first mortgage bonds, for example, in new common stock.[4] A study of the legislative history does not suggest that Congress intended to exclude any particular type of security from the impact of § 11; certainly at no place in the Act itself may there be spelled out the exception that "secured debentures" are without the scope of the Act. More than that, I do not think Congress could have intended that the validity of a plan should depend upon the fortuitous circumstance of whether, in any given case, the bonds were first mortgage bonds or income or other type bonds or debentures.

With the power to deal with debentures in any case where there is an attempt to effect compliance with the Act, the Commission may approve a plan for distribution in kind to holders of debentures and it has been so decided in this Circuit. In re Standard Gas & Electric Co., 3 Cir., 151 F.2d 326, 329, 330, certiorari denied 327 U.S. 796, 66 S.Ct. 820. It must follow that a first mortgage bond likewise is subject to the impact of the Act; hence I see no reason why such security holders may not also be forced to accept distribution in kind, whether they be called true bondholders or "secured debenture holders." Distribution in kind, then, in the matter at bar, is an appropriate and fair method for effecting compliance with the Act. The main asset of American is the common stock of Minneapolis; the latter as an operating company needs cash for reduction of debt, construction of properties and working capital. It is not unfair to utilize the pledged cash to increase the stability of Minneapolis and thus strengthen its common stock. The argument is made that the pledged cash and a sale of the new common stock should be had to pay the secured debentures in cash. But here the companies, all the security holders and the Commission itself face an impediment. The City of Minneapolis strongly objects to any sale of stock of the operating company; and it will not permit the transfer of the franchise if such course should be followed. The conclusion is clear that any alternative other than distribution in kind to the secured debenture holders would result in non-compliance for many years.

One secured debenture holder argues that the proposed plan results in an alteration of his contract rights as fixed by the trust indenture and is therefore violative of § 26(c) of the Act, 15 U.S.C.A.

---

[1] §§ 2(a) (16), 7(c), 11(b) (2), 11(d), 11(e) of the Act, 15 U.S.C.A. §§ 79b (a) (16), 79g (c), 79k (b) (2), (d, e).

[2] Federal Trade Commission Report, Utility Corporations, Part 72-A, pp. 154, 305, 357, 373-4, 378, 864; S.Rep. 621, 74th Cong., 1st Sess., pp. 13, 16, 32, 33, 59; H.R.Rep.No.1318, 74th Cong., 1st Sess., pp. 49, 50.

[3] Cf. In re American Gas & Power Co., D.C.Del., 55 F.Supp. 756.

[4] Cf. In re Jacksonville Gas Co., D.C., 46 F.Supp. 852.

§ 79z(c); and it is further argued that payment in kind, even if authorized by Congress, is unconstitutional in that his claim will be diluted. These and analogous arguments, I have concluded, may be further elaborated if the parties desire before the appellate courts. I have already rejected such a view in In re American Gas & Power Company, D.C. Del., 55 F. Supp. 756.

2. I think the secured debenture holders receive fair and equitable treatment under the plan. The historical and financial data as well as the estimates on assets and earnings support the findings and conclusions of the Commission, i. e., the secured debenture holders are receiving the full and fair equivalent of the rights surrendered. If compelled to give debenture holders bankruptcy "equitable equivalents", this plan would not satisfy these requirements, for in the bankruptcy situation the security is evaluated on face amount as a matured obligation plus extra compensation for loss of senior position, whereas in a § 11 proceeding where there is admittedly no insolvency, relative participation is based on standards of colloquial fairness and equity.[5] In re United Light & Power Co., D.C. Del., 51 F.Supp. 217. True, a debt security looks for safety and interest rate;[6] but here the secured debenture holders receive out of the security pledged as collateral shares of stock which are the fair equivalent of their claims. The Commission found—I think correctly—that the new common stock which the former secured debenture holders will receive will give them an increase in their participation in earnings in excess of any possible return that could have been realized if the debentures were retained.

Not only is the plan fair and equitable to the secured debenture holders, but it is also fair to the common stockholders. The consideration and analysis which the Commission has given to the plan sub judice, as found in its three opinions, demonstrates that its findings, on fairness as to all security holders, are amply supported by the record.

However, one further point remains for settlement. One group of debenture holders argue that the plan is unfair because it makes no provision for the election of a new board of directors which will be representative of the secured debenture holders. This argument is based on the fact that the secured debenture holders represent in excess of 80% of the new stock to be issued. It is clear where redistribution of voting power is involved, in any case coming before the Commission, representation should be accorded to the various interests involved. The Commission is aware of this and has set up procedures for such representation in several reorganizations.[7] But, this does not mean that in every case there must be a redistribution of voting power eo instanti. Under the particular facts present, the new board of directors mentioned in the plan was selected by agreement with the debenture committee which supplied the names of three of the seven directors who are to act. Three others were the president and counsel of Minneapolis and the seventh was selected as the lone representative of the stockholders of American. This board, so selected, will serve merely as the initial board. The secured debenture holders, representing 80% of the stock, will have complete control at the next annual stockholders meeting which follows the consummation of the plan. The argument for redistribution of voting power I think is without merit.

3. Moreover, the plan is appropriate to effectuate the provisions of § 11 of the Act. Here, the objectors do not complain that the plan is not in full compliance with § 11(b) (2). Their arguments are directed to the proposition that they have a preference for a different type of plan. A plan under § 11(e) need not be the only possible plan to effect compliance with §

---

[5] For a more detailed discussion on this point see In the Matter of Interstate Power Company, D.C.Del., 71 F.Supp. 164.

[6] See In re Standard Gas & Electric Co., supra, n. 12.

[7] See Kings County Lighting Company, Holding Company Act Release No. 7060; Peoples Light and Power Company, Holding Company Act Release No. 6000; The Commonwealth & Southern Corporation, Holding Company Act Release No. 5825

11(b) (2). Commonwealth & Southern Corporation v. S. E. C., 3 Cir., 134 F.2d 747, 751; In re Standard Gas & Electric Co., D.C. Del., 63 F.Supp. 876, 878; In re North Continent Utilities Corporation, D.C. Del., 54 F.Supp. 527, 530. The reason for this is that the choice of a plan which may be found to be fair rests in the holding company management, subject to the approval of the Commission and the court of enforcement.

For specific findings I adopt the findings of the Commission. An order may be submitted which will provide for the approval of the plan as fair and equitable and as appropriate to effectuate the provisions of § 11(b).