## In re UNITED CORPORATION.
### Civ. No. 1146.

United States District Court
D. Delaware.
Jan. 31, 1949.

Harry G. Slater, Herbert D. Miller, William R. Nowlin and Robert Olson, all of Washington, D. C., for the Securities and Exchange Commission.

William S. Potter (of Southerland, Berl & Potter), of Wilmington, Del., and Richard J. Smith and William T. Farley (of Whitman, Ransom, Coulson & Goetz), both of New York City, for the United Corporation.

Louis Boehm and Seymour M. Heilbron (of Hays, St. John, Abramson & Schulman), both of New York City, for Committee of Holders of $3 Cumulative Preferred Stock.

Ernest Mahler (of O'Brien, Driscoll, Raftery & Lawler), of New York City, for $3 Cumulative Preferred Stock held by Schiff and others.

John H. Jackson, of New York City, for Waterman Corporation and other Preference Stockholders.

Randolph Phillips, Common Stockholder, pro se.

Joseph B. Hyman, of Alexandria, Va., for Randolph Phillips as Attorney in Fact.

LEAHY, Chief Judge.

The United Corporation's present plan under § 11 of the Public Utility Holding Company Act, 15 U.S.C.A. § 79k, results in the retirement of all of its preference stock. The SEC approved the plan which provides for an exchange of each share of United's preference stock for the following package of securities:

1 share of Public Service Electric and Gas Company Common Stock

1 share of The Columbia Gas System, Inc. Common Stock

%₁₀ths of a share of The Cincinnati Gas & Electric Company Common Stock.

$6 in cash.[1]

The organization, capitalization, assets, liabilities, the income from investments, United's former compliances with § 11, the various former exchange plans, the purchase of its preference stock in the market, and the sale of securities to create cash to implement compliance, are detailed in former proceedings.[2]

I approve the plan because I agree with the essential findings and opinion of the SEC. These findings are:

I. The reasonably foreseeable earnings and dividends on the package are as follows (Findings and Opinion, pages 19 and 20):

| Shares | Earnings Range | | Dividend Range | |
|---|---|---|---|---|
| 3/10 Cincinnati | $ .54 — | $ .78 | $ .42 — | $ .54 |
| 1 Columbia | 1.35 — | 1.45 | .75 — | .90 |
| 1 PEG | 2.04 — | 2.96 | 1.60 — | 1.80 |
| $6 cash at 6% | .36 — | .36 | .36 — | .36 |
| | $4.29 | $5.55 | $3.13 | $3.60 |

II. "* * * in measuring the rights which preference stockholders will receive under the plan to determine whether they are the equitable equivalent of the rights being surrendered, we have not attempted nor is it necessary to fix a specific value in dollars for the preference stock or the package. Nor have we sought to measure the adequacy of the proposed package by an exact comparison of the market value of the package securities with the market value of the preference stock or with its liquidation value or redemption price. Although we have given consideration to all of these factors, our appraisal of the proposed package has given primary consideration to the extent and quality of the prospective earnings coverage for and dividends applicable to the preference stock in relation to the prospective earnings and dividends applicable to the proposed package" (Findings and Opinion, page 22).

"Upon a full consideration of the record, we have concluded that the reasonably foreseeable earnings and dividends applicable to the package adequately compensate the preference stockholders for all the rights which they are required to surrender. In finding that the proposal falls within the range of fairness and equity, we recognize that our conclusion is not one which can be arrived at with mathematical precision, but that rather it is a type of judgment which necessarily encompasses a permissible range" (Findings and Opinion, page 22).

III. "The record shows, and it is undisputed, that, since the early 1930's and until 1947, United's preference stock was of inferior grade" (Findings and Opinion, page 21).

"The previous retirement of preference stock pursuant to Section 11(e) plans, earlier referred to, has improved the position not only of the remaining preference stock but also of the common stock" (Findings and Opinion, page 25).

IV. "* * * the earnings and assets applicable to the common stock after consummation of the plan will be approximately the same as or better than before the plan, the quality of the income applicable to the common stock will be improved as a result of the elimination of the preference stock, and the plan will facilitate the possible resumption of dividends and the distribution of portfolio securities to the common stockholders. We find that the plan is fair and equitable to the common stockholders, and we adopt the staff's proposed findings

---

[1] Cash will be paid in lieu of issuing fractional shares of Cincinnati stock under the exchange.

[2] See, The United Corporation, 11 S.E. C. 67, 13 S.E.C. 854, Holding Company Act Release No. 5440, Holding Company Act Release Nos. 5812, 5859, 5452, Holding Company Act Release No. 6331, Holding Company Act Release No. 6836.

in this respect" (Findings and Opinion, page 27).

V. "To give effect to the Congressional intent that company managements be given latitude in working out their own solutions to Section 11 problems, we should not reject United's plan and adopt Phillips' plan unless the latter is so clearly superior as to persuade us that United's plan is unfair and inequitable, or otherwise deficient under the Act.

"Accordingly, we have analyzed Phillips' plan with this end in view. For the reasons set forth in the staff's recommended findings and opinion at pages 44 and 45, which we adopt, we cannot find that it is so clearly superior to the management plan as to demonstrate that United's plan fails to meet the standards of Section 11" (Findings and Opinion, page 30).

The Staff's reasons for recommending rejection of the Phillips' plan, which appear on pages 44 and 45 of its Recommended Findings and Opinion, were: "it gives no adequate assurance of being carried out with reasonable promptness, if at all"; "It * * * would involve substantial and unnecesssary expenses"; "the market would probably be flooded with warrants and it is doubtful if the stockholders who chose to sell their warrants would be able to realize their full value"; Phillips' claims are based on invalid comparisons because they "discard completely * * * the likelihood that United will receive dividend income from its investments in Niagara Hudson"; "Phillips' claim, that his plan would minimize the chance of litigation, is entirely without merit."

The detailed analysis of the record, as set forth in the Findings and Opinion recommended by the Staff and adopted by the Commission, and summarized in the Findings and Opinion of the Commission, wholly supports and justifies the essential findings above summarized.

The SEC's approval of the plan at bar obviously meets the criteria of fairness under the Act. On the basis of reasonably foreseeable earnings, comparison of the value of the securities to be exchanged under the plan for the securities to be received, the preference shareholders are receiving their equitable equivalents.[3] In reaching this conclusion, I have considered the market history of the preference shares,[4] the effect of the charter provisions of United,[5] as well as the redemption rights of those shares,[6] and as well as the relative hardships resulting to any class or classes of security holders in the effort to comply with the mandates of the Act.[7]

Randolph Phillips, owning and representing common stock, is one of the most potent objectors to the plan. In fact, he offered his own plan. But the SEC and its Public Utilities Division Staff analyzed that plan and concluded, rightly I think, it was neither fair nor feasible. Moreover, it was concluded, rightly again I think, United's plan should not be rejected unless the proposed Phillips' plan was so palpably superior as to compel the ineluctable conclusion that United's plan was unfair. A plan under § 11 need not be the only plan which will effect compliance with the Act

[3] Otis & Co. v. S. E. C., 323 U.S. 624, 65 S.Ct. 483, 89 L.Ed. 511; In re Engineers Public Service Co., 3 Cir., 168 F.2d 722; Lahti v. New England Power Association, 1 Cir., 160 F.2d 845, 851; In re Engineers Public Service Co., D.C. Del., 71 F.Supp. 797; In re Illinois Power Co., D.C.Del., 74 F.Supp. 317.

[4] In re Engineers Public Service Co., D. C.Del., 71 F.Supp. 797.

[5] Otis & Co. v. S. E. C., supra; In re Cities Service Co., D.C.Del., 71 F.Supp. 1003; In re Engineers Public Service Co., D.C.Del., 71 F.Supp. 797; In re Electric Bond & Share Co., D.C.S.D.N.Y., 73 F. Supp. 426, 446.

[6] New York Trust Co. v. Securities and Exchange Commission, 2 Cir., 131 F.2d 274, certiorari denied 318 U.S. 786, 63 S.Ct. 981, 87 L.Ed. 1153, rehearing denied 319 U.S. 781,. 63 S.Ct. 1155, 87 L.Ed. 1725; City Nat. Bank & Trust Co. v. Securities and Exchange Commission, 7 Cir., 134 F.2d 65; In re Illinois Power Co., supra; In re New England Public Service Co., D.C.Me., 73 F.Supp. 452, 457.

[7] In re Engineers Public Service Co., 3 Cir., 168 F.2d 722; In re Engineers Public Service Co., supra, n. 4; In re Cities Service Co., supra, n. 5.

and the choice of any plan rests primarily with the subject company.[8]

 Likewise another objection is without merit, e. g., the preference shareholders should receive cash in exchange for their securities. A plan under the Act for paying off securities may provide for payment in cash[9] or in securities.[10] Other objections have been considered including the profert that changed conditions call for a re-examination of the plan by the SEC. But from developments since the proceedings before the SEC, it would appear that the facts support the fairness of the plan. The reference is to the dividends declared on the securities included in the package to go to the preference shareholders, the favorable decision of the PUC of Ohio on the rates of Cincinnati Gas & Electric Company, and the proposed new financing of the Columbia Gas System, Inc. The proffered evidence as to the changes indicates they are not abnormal and they are not of such a material character as to render the plan, to paraphrase Chief Judge Nordbye, untenable.[11]

 Relying on Securities and Exchange Commission v. Chenery, 332 U.S. 194, 67 S. Ct. 1575, 91 L.Ed. 1995, a point was made that as some of the directors had commencing in 1943 purchased shares of common stock as owners thereof no plan supported by them could be anything but unfair to the holders of the preference stock or, in any event, such purchases makes the plan suspect and questionable. The SEC, I have concluded, adequately met the point by finding that "The preference Stockholders' Committee and Louise D. Johnson have attacked the plan on the ground that purchases of United's common stock by Hickey, the president and a director of United, and by John J. Burns, a director and one of United's counsel, while a plan was being evolved make the plan suspect and questionable. They imply that, by reason of such purchases, any plan supported by the management must be regarded as unfair and disapproved.

"We cannot agree. We think that the fact of these purchases is relevant to the issues presented to us only insofar as it may indicate a motive on the part of the management to favor one class of stock over the other and as it may affect the weight to be given to the testimony of those participating in such purchases.

"We have recognized that here, as elsewhere, a filing by a holding company carries with it the possibility that the management or some elements of the management may be seeking to advance their own interests or the interests of any one class of security holders as against those of others. Every plan is scrutinized by the staff and by this Commission with this possibility in mind. In view of Hickey's common stock transactions, we have also been especially searching in our examination of his testimony in relation to the fairness of the

---

[8] Commonwealth & Southern Corp. v. Securities and Exchange Commission, 3 Cir., 134 F.2d 747, 751; Lahti v. New England Power Association, 1 Cir., 160 F.2d 845, 850; In re Community Gas & Power Co., D.C.Del., 71 F.Supp. 171, 174, 175, affirmed 3 Cir., 168 F.2d 740; In re Standard Gas & Elec. Co., D.C.Del., 63 F.Supp. 876, 878; In re North Continent Utilities Corp., D.C.Del., 54 F.Supp. 527, 530.

[9] In re North Continent Utilities Corp., D.C.Del., 54 F.Supp. 527; In re United Public Utilities Corp., D.C.Del., 52 F. Supp. 975.

[10] Otis & Co. v. S. E. C., 323 U.S. 624, 65 S.Ct. 483, 89 L.Ed. 511; In re Standard Gas & Electric Co., 3 Cir., 151 F.2d 326, certiorari denied sub nom. Guaranty Trust Co., Trustee, v. Securities and Exchange Commission, 327 U.S. 796, 66 S. Ct. 820, 90 L.Ed. 1022; Lahti v. New England Power Association, supra; and see the Commission's recent decisions on § 11(e) plans involving mandatory exchanges of preferred stocks for portfolio securities; New England Power Association, Holding Company Act Release No. 6470; American States Utilities Corporation, Holding Company Act Release No. 6540; Cities Service Company, Holding Company Act Release No. 7368; Washington Railway and Electric Company, Holding Company Act Release No. 7410; Central Public Utility Corporation, Holding Company Act Release No. 7691; Louisville Gas and Electric Company, Holding Company Act Release No. 7789; The Middle West Corporation, Holding Company Act Release No. 7905; Northern States Power Company, Holding Company Act Release No. 7950.

[11] In re Northern States Power Company, D.C., 80 F.Supp. 193.

plan. The record, of course, contains testimony of other witnesses, including Hopkinson, who testified as a financial expert in support of the plan, as well as operating officials of both Columbia and Cincinnati. In addition, substantial portions of the record in the Public Service reorganization proceedings were incorporated into this record as pertinent to the PEG common stock. In reaching our conclusions regarding the fairness of United's plan, we have carefully weighed all of the evidence and testimony in the record, and have given due regard to the possibility of any relationship between Hickey's purchases and holdings of common stock and his testimony. And taking into account the possibility that the submission of the plan and Hickey's testimony on the plan may have been influenced by the purchases of Hickey and Burns, we have concluded, on the basis of the entire record, that the plan is fair and equitable."

Accordingly, I think the application of the SEC should be granted and an order should be submitted providing that the plan is fair and equitable and appropriate to effectuate the provisions of § 11 of the Act.