**In re CENTRAL & SOUTH WEST UTILITIES CO. et al.**

**No. 874.**

District Court, D. Delaware.

June 19, 1946.

Morton E. Yohalem and Leo O. McCabe, both of Philadelphia, Pa., for the Securities and Exchange Commission.

George Roberts and James A. Austin, both of New York City, for Central & South West Utilities Co. and American Public Service Co.

Stephen S. Bernstein, of New York City, for Common Stockholders Committee of Central & South West Utilities Company.

Max Swiren, of Chicago, Ill., for Middle West Corp.

Robert C. Barab, of Wilmington, Del., for Oscar Schleiff, a common stockholder of Central & South West Utilities Co.

LEAHY, District Judge.

The Securities and Exchange Commission has applied, pursuant to Secs. 11(e) and 18(f) of the Public Utility Holding Company Act of 1935, 15 U.S.C.A. §§ 79k(e), 79r(f), for the enforcement of a plan filed pursuant to Sec. 11(e). The plan was approved by the Commission. Findings of fact, conclusions of law and the opinion of the Commission are adopted. In addition, special findings of fact and conclusions of law are found.

1. Central and South West Utilities Company, a Delaware corporation, is a holding company under Sec. 2(a) (7) of the Public Utility Holding Company Act, 15 U.S.C.A. § 79b(a) (7). Central is a subsidiary of The Middle West Corporation, a Delaware corporation, under Sec. 2(a) (8) of the Act. American Public Service Company, a Delaware corporation, is a holding company under Sec. 2(a) (f) of the Act and is a subsidiary of Central. All three companies are registered holding companies.

2. American owns 260,000 shares (100%) of the common stock and 25,643 shares (36.10%) of the preferred stock of West Texas Utilities Company, and 14,815 shares (13.33%) of the common stock of Public Service Company of Oklahoma.

3. Central owns 96,234 shares (99.79%) of the common stock of American, 96,352 shares (86.67%) of the common stock of Public Service Company of Oklahoma, 202,180 shares (100%) of the common stock of Central Power and Light Company, and 434,500 shares (100%) of the common stock of Southwestern Gas and Electric Company.

4. Middle West, parent of Central, holds 55,070 shares (46.91%) of the $7 prior lien stock, 11,500 shares (100%) of the $6 prior

lien stock, 76,342 shares (57.335%) of the $7 preferred stock, and 2,057,679 shares (61.04%) of the common stock of Central. Middle West also owns 37,968 shares (47.61%) of the 7% preferred stock of American.

5. The public holds 41,778 shares (52.39%) of the 7% preferred stock of American and 200 shares (0.21%) of the common stock of American. The public holds 62,330 shares (53.09%) of the $7 prior lien stock, 56,808 shares (42.665%) of the $7 preferred stock, and 1,313,553 shares (38.96%) of the common stock of Central.

6. The sole objector to the enforcement of the plan is one Oscar Schleiff, who alleges himself to be a holder of record of 1,000 shares of common stock of Central. Said Schleiff is not a holder of record of such stock, but for the purpose of these proceedings he will be deemed to be a person affected by the plan.

7. On February 8, 1940, Central and American filed with the Commission joint applications and declarations proposing a statutory merger of Central and American under the laws of Delaware. The merger provided for two classes of stock, preferred and common, to be issued in exchange for the outstanding stocks of the merging companies. The Commission, on December 5, 1940, instituted proceedings under Section 11(b) (2) of the Act alleging that the Commission had reason to believe that the corporate structures and continued existence of Central and American unduly and unnecessarily complicated the structure and unfairly and inequitably distributed the voting power among the security holders of the holding company system of Middle West, and that voting power was unfairly and inequitably distributed among the security holders of Central and American. On June 4, 1942, the Commission disapproved the proposed plan of merger and ordered the termination of the corporate existence of either Central or American and a change in the capitalization of the surviving company to a capitalization consisting of one class of stock, i.e., common stock, in a single corporation. Jurisdiction was reserved by the Commission to pass on the questions raised in the proceedings with respect to the rank or status and participation of the securities held by Middle West. On appeal, the order of the Commission was affirmed. See Central & South West Utilities Co. v. Securities and Exchange Commission, 78 U.S.App.D.C. 37, 136 F.2d 273.

8. On August 2, 1943, Central and American, joined by Middle West, filed a plan purporting to effectuate compliance with the Commission's order of June 4, 1942, calling for a merger of Central and American and the issuance by the new company of common stock only. This plan provided for treatment of Middle West on a pari passu basis with the public stockholders. On August 11, 1945, an amended plan was filed which proposed a settlement by Middle West with the public stockholders of Central. On March 11, 1946, the present plan was filed.

9. The plan provides in substance for the merger of American into Central and the issuance by the new company of 6,600,000 shares of common stock with a par value of $5 per share. Subject to an exchange offer, all the outstanding shares of preference stocks of Central and American will be retired by paying to the holders thereof an amount in cash equal to the respective redemption prices of such shares, including accrued dividends to the effective date of the plan. Sufficient shares of the common stock of the new company will be sold at competitive bidding to raise the cash necessary to retire the preference stocks not exchanged. The preference shares of Central and American, at the option of the holders (other than Middle West), may be exchanged on the basis of their respective redemption prices, including accrued dividends, for common stock of the new company at the public offering price of such common stock to be sold at competitive bidding, except that the accrued dividends on the 7% preferred stock of American and on the $7 and $6 prior lien stock of Central will be paid in cash. All preference shares held by Middle West shall be exchanged for stock and not redeemed for cash. Eight shares of the common stock of the new company shall be exchanged for each of the outstanding

common shares of American, excluding shares owned by Central. There shall be issued and delivered to the public holders of the outstanding common stock of Central their pro rata portion (38.96359%) of the remaining shares of the common stock of the new company; in addition, the public common stockholders of Central shall receive (1) 264,000 shares (4%) of the common stock of the new company, and (2) common stock of the new company equal to 38.96359% of the dividend accruals on the preference stocks of Central and American held by Middle West in excess of the annual rate of $3.00 per share from March 1, 1946 to the date of the acceptance of a bid for the shares of the common stock of the new company at competitive bidding.

10. There is pending in this court an action entitled Schleiff v. Central and South West Utilities Company and others docketed as Civil Action No. 838, which was instituted on February 21, 1946. The relief sought in this action includes, inter alia, the subordination of the claims of Middle West against Central and American to the claims of the public security holders of Central and American, and an accounting by Middle West to Central and American. The contentions made and the issues raised by Schleiff's complaint are, in general, the same contentions advanced and issues raised on behalf of the public security holders of Central and American against Middle West in the proceedings before the Commission, and all of such issues are proposed to be finally disposed of by the plan.

11. Whether, and to what extent, Middle West may be liable to Central or American or the public security holders of Central or American, and whether, and to what extent, the stock of Central or American owned by Middle West is required to be subordinated to the claims of the public security holders thereof, are reasonably disputable questions, both as to matters of law and of fact.

12. The approval of the plan by the Commission, its enforcement by the court, and its consummation by the parties will effect a complete settlement and discharge of all the claims of Central and American and of the public security holders of Cen-

tral and American against Middle West which in any way relate to or involve the security holdings of Middle West in Central and American, or the management and control by Middle West, or its predecessors, of Central and American, and their subsidiaries.

13. The concessions by Middle West to the public security holders of Central and American, as provided in the plan, constitute a fair and reasonable settlement of the claims and contentions which have been made by them or in their behalf, or by them in behalf of Central and American.

14. The offer of exchange whereby the public holders of the preference stocks of Central and American may exchange their preferred stocks at the redemption price for common stock of the new company at a price equal to the public offering price of such common stock, as established by competitive bidding, such exchange offer to be accepted by the stockholders prior to the date of such bidding, is fair and equitable to each and all of the persons affected thereby.

15. On September 4, 1943, the Commission issued its Notice of Filing and Notice of and Order for Hearing (Holding Company Act Release No. 4542) on the plan then on file, which required that notice of such hearing be given to all security holders of Central and American (insofar as the identity of such security holders was known or available to them) by mailing to each of said persons a copy of the Notice for Hearing to his last-known address at least twenty days prior to date of hearing. Notice of said hearing was also published in the Federal Register, and by the Commission, was mailed to all persons on the Commission's mailing list for release under the Act, and was released to the press. On August 13, 1945, the Commission issued its Notice of Filing of Amendment and Order for Argument and Hearing (Holding Company Act Release No. 5982) on the amended plan filed, which required that notice of such hearing be given to all security holders of Central and American (insofar as the identity of such security holders was known or available to them) by mailing to each of said persons a copy of the Notice for Hearing

to his last-known address at least twenty days prior to date of hearing. Notice of said hearing was also published in the Federal Register, and by the Commission, was mailed to all persons on the Commission's mailing list for releases under the Act, and was released to the press. On October 31, 1945, the Commission issued its Order Reconvening Hearings on the amended plan (Holding Company Act Release No. 6174) for the purposes of granting opportunity to examine witnesses respecting the amended plan and bringing the record down to date. This Order was served on Middle West, Central and American and their respective counsel and to all persons granted the right to be heard and participate in the proceedings with respect to the amended plan. Notice of said hearing was also published in the Federal Register, and by the Commission, was mailed to all persons on the Commission's mailing list for releases under the Act, and was released to the press. On March 12, 1946, notice reconvening the hearing with respect to the plan was sent by the Trial Examiner to the respective counsel for all the parties and to all persons granted the right to participate in the joint proceedings theretofore had. A copy of the plan, together with the agreement of merger of Central and American and notice of the time and place of hearing before the Trial Examiner on such plan, was mailed to all stockholders of Central and American prior to the date of the hearing.

16. Pursuant to the Commission's orders, public hearings were held on the various plans and the amendments thereto, at which times such holders of the common and preferred stocks of American and Central as appeared and desired to participate had a full and fair hearing. An opportunity was afforded to each of them to file a written statement of objections to all or any part thereof. Oscar Schleiff, appearing by counsel, and representing that he owned 1,000 shares of the common stock of Central, was conditionally granted the right to participate and be heard subject to submitting information as to the time of purchase and the cost of his shares of such stock. The Commission heard oral argument on the plan and the filing of proposed findings, and briefs were waived by all the participants, including Schleiff. On April 30, 1946, the Commission approved the plan (Holding Company Act Release No. 6606) as fair and equitable to the persons affected by it as necessary to effectuate the provisions of Section 11(b) of the Act.

17. The Commission applied to the court under Sections 11(e) and 18(f) of the Act for enforcement of the plan at the request of Central, American and Middle West.

### Discussion.

■ No new problems under the Act arise in this case. Including public held securities, all the parties, except an objectant who claims to be a shareholder of 1,000 shares of Central common, consider the settlement of the claims of American and Central against Middle West a fair compromise and consider, also, that the plan is fair and equitable. Here, the proposed plan for reorganization provides for complete settlement and discharge of all asserted claims, equities and possible derivative suits, including claims of and against Middle West as the parent holding company. The record sustains the determination that the compromise as to all of the claims was arrived at after arm's length bargaining and dealing. The finding of the Securities and Exchange Commission that the plan is fair and equitable to the persons affected thereby is supported by the evidence. Under the views and reasoning expressed by this court on, at least, two other occasions; In re Midland United Co., D.C.Del., 58 F.Supp. 667; In re United Gas Corporation, D.C.Del., 58 F.Supp. 501; it apppears that the compromise and settlement of the inter-company claims is a fair and reasonable one. The legal question raised—the doctrine of subordination as taught by Taylor v. Standard Gas & Electric Co., 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669, should be extended so as to subordinate securities within a class held by a wrong-doing parent company beneath public held securities of the same class— is a nice one. But the very existence of the legal point, among the facts, is challenged; and its application to those facts is debatable. This is one of the reasons

694

for the proposed settlement. In short, the fact situation here shows that the compromise and settlement of the alleged wrongs is so eminently fair, the subordination question does not arise.

■ The record likewise sustains a finding that the merger of Central and American and the capitalization of the surviving company on a one-stock basis, i. e., common stock, are appropriate to effectuate the provisions of Sec. 11(b). Moreover, the present plan furnishes an appropriate method of achieving the necessary result. The conclusions of law which follow are:

1. Central and American are Delaware corporations and inhabitants of Delaware within the meaning of Section 25 of the Act, 15 U.S.C.A. § 79y. Both are registered holding companies under the Act.

2. This court has jurisdiction over the subject matter of this action and over Central and American.

3. The Commission gave adequate and reasonable notice and opportunity for hearing to all interested persons with respect to the plan and the proceedings therein before it.

4. Adequate and reasonable notice of and opportunity for hearing were given to all interested persons in the proceedings before this court.

5. Oscar Schleiff is a person affected by the plan and entitled to be heard in these proceedings.

6. The transactions contemplated in, and proposed by, the plan are appropriate to effectuate the provisions of Section 11 of the Act within the meaning of Section 11(e) of the Act.

7. The plan is fair and equitable to the persons affected thereby.

8. It is appropriate that this court take exclusive jurisdiction, subject to the terms and conditions of the order of the Commission approving the plan dated April 30, 1946, over Central and American and the assets thereof wherever located, and by its order herein the court will take exclusive jurisdiction over Central and American and the assets thereof wherever located, for the purpose of carrying out the terms and provisions of the plan.