Settle an order on two days' notice.

In re NEW ENGLAND PUBLIC SERVICE CO.

No. 477.

District Court, D. Maine, S. D.

Aug. 6, 1947.

As Amended Aug. 15, 1947.

Robert Bernstein and Samuel J. Levinson, both of New York City, for common stockholders of Northern New England Co. et al.

Harlow B. Lester, Ella Jay Sturgell, and Harry G. Slater, all of Philadelphia, Pa., for applicant Securities and Exchange Commission.

Arthur E. Whittemore, of Boston, Mass., for Russell B. Stearns.

John N. Worcester, of Boston, Mass., for State Street Investment Corporation and others.

A. Albert Minton, of New York City, for Martin Protective Committee for preferred stockholders of NEPSCO.

Leon V. Walker, of Portland, Me., for Northern New England Co.

Morris L. Forer, of Philadelphia, Pa., for David J. Greene, preferred stockholder for NEPSCO and common stockholder of Northern New England Co.

Charles W. Allen, of New York City, Leonard A. Pierce, of Portland, Me., E. H. Maxcy, of Augusta, Me., and Carl Joyce Gilbert, of Boston, Mass., for NEPSCO.

CLIFFORD, District Judge.

This is a proceeding brought by the Securities and Exchange Commission[1] at the request of the New England Public Service Company[2] to enforce and carry out a plan for the simplification of the corporate structure of NEPSCO, filed pursuant to Section 11(e) of the Public Utility Holding Company Act of 1935, 49 Stat. 820, 15 U.S.C.A. § 79k(e)[3] and approved by the Commission.[4]

The plan submitted here for approval and enforcement is one step in a series designed eventually to achieve the complete liquidation of NEPSCO. This particular step concerns the retirement of two series of Prior Lien stock. The issue presented under this proceeding is whether this court, after notice and hearing, shall approve such plan as fair and equitable and appropriate to effectuate the provisions of Section 11 of the Act.

The present matter has been in litigation for a long period of time. This Court feels, therefore, that a brief review of what has transpired is necessary for a proper understanding of the case.

NEPSCO, a Maine Corporation, is solely a holding company, owning 77.8% of the common stock of the Central Maine Power Company, 80.9% of the common stock of the Public Service Company of New Hampshire, and 35.5% of the common stock of the Central Vermont Public Service Corporation, all three being operating companies in their respective states. In addition, NEPSCO has a statutory parent holding company, Northern New England Company. The corporate structure and the distribution of voting power in this system were determined by the Commission on May 2, 1941 to be in violation of the provisions of Section 11(b) (2) of the Act. NEPSCO was accordingly ordered to recapitalize on a common stock basis or, at its election, liquidate its affairs and distribute its assets to its security holders.[5] This order, not having been appealed, is

[1] Referred to herein as "the Commission."

[2] Referred to herein as "NEPSCO."

[3] Referred to herein as "the Act."

[4] Findings and Opinion. File No. 59–15. Holding Company Act Release No. 7511.

[5] Holding Company Act Release No. 2737: New England Public Service Co., et al., 9 S.E.C. 224 (1941).

now our starting point. NEPSCO has chosen the second alternative of this order.

NEPSCO, carrying out the provisions of the order, obtained the approval of both the Commission and this Court of a plan to dispose of its holdings of debt and stock in New England Industries, Inc., Keyes Fibre Company, and the Bucksport Water Company for cash in the amount of $16,-500,000. This plan was duly executed and the sale was consummated on October 30, 1945.[6]

The present phase of the liquidation process was commenced by NEPSCO on November 25, 1946 when it filed with the Commission a plan dated November 23, 1946 for retirement of Prior Lien stock, employing toward the accomplishment of this purpose the cash proceeds of $16,500,000 received from the sale of industrial assets. After proper notice, public hearings were held. The above-mentioned Plan was then superseded by an Amended Plan, dated March 8, 1947, and filed by NEPSCO with the Commission on March 10, 1947. Proper notice and public hearings were had with reference to this Plan, and on June 27, 1947 the Commission in its Findings and Opinion found that this Amended Plan was necessary, fair, and equitable as required by Section 11(b) of the Act, provided that it was amended to require payment to the holders of Prior Lien stock in the sum of $100 a share plus accrued dividends, the issuance of certain Certificates of Contingent Interest to these holders as evidence of their right to receive additional payment if such right should later be found to exist, and compensation for delay in the payment of this latter amount.[7]

Such an amendment, dated June 30, 1947, was filed by NEPSCO on June 30, 1947. And, in accordance with Section 11(e) of the Act, it requested the Commission to apply to a United Staates District Court for enforcement of this plan as amended. On July 3, 1947, this Court, having received such petition, issued an order for hearing to be held on July 24, 1947, proper notices to be mailed by NEPSCO not later than July 8, 1947. Notice was duly given and briefs from the Commission and three other groups were duly received and filed, whereupon hearing was had as ordered, on July 24, 1947.

Before discussing the salient features of the NEPSCO plan, it is necessary to mention a factor of great concern to all parties in interest. A portion of the $16,500,-000 proceeds of the sale of industrial assets intended for use in the retirement of the Prior Lien stock constitutes a capital gain and is, therefore, subject to a capital gains tax of approximately $3,200,000 unless the relief provisions of Supplement R of the Internal Revenue Code, 56 U.S.Stat. 881, October 21, 1942 apply. Under Supplement R, I.R.C. Sec. 371(b), 26 U.S.C. A.Int.Rev.Code, § 371(b), Congress has provided against recognition of capital gain where:

(a) An exchange has been made by a holding company pursuant to a Commission order under Section 11 of the Act; and

(b) The proceeds of such sale are applied within 24 months of the date of receipt to retirement of the holding company's stock or the purchase by it of additional securities of its utility subsidiaries.

This 24-month period expires on October 30, 1947.

Consequently, the following plan is devised, in the interests of all classes of NEPSCO stock to take advantage of Supplement R by setting apart for future determination by the Commission certain problems, the final disposition of which could not in all probability occur until many months after October 30, 1947.

This Court is convinced that this situation is not caused by negligence or delay on the part of any group interested in the present litigation. It is the inevitable result of highly intricate and protracted proceedings. The time factor is of much importance in the disposition of this case. Regarding this phase of the controversy, all parties are in agreement.

The plan of NEPSCO, as amended, provides in brief as follows:

1. All the Prior Lien stock of NEP-

---

[6] See Holding Company Act Release No. 6123.

[7] Holding Company Act Release No. 7511.

SCO is to be retired. This includes 118,747 shares of the $7 dividend and 60,000 shares of the $6 dividend series.[8]

2. Prior Lien stockholders are to be paid on a basis of $100 per share plus accrued dividends:

a. Cash or, at the holder's election, common stock in the New Hampshire subsidiary at a price per share fixed by competitive bidding, subject to the right of NEPSCO to reduce pro rata elections to receive stock insofar as necessary to exhaust the $16,500,000 proceeds of the sale of industrial assets;

b. Or (Alternative 1) if no competitive bidding has been had or if no acceptable bids have been received, subject to Commission approval, in lieu of the price per share of New Hampshire stock as determined in (a), NEPSCO may itself fix a price for New Hampshire stock which is the subject of the option, obtaining a bank loan for funds, if any, required in excess of $16,500,000;

c. Or (Alternative 2) NEPSCO may elect, subject to Commission approval, to cancel the option of holders of Prior Lien stock to receive stock, valued as in (a) or (b) above, in New Hampshire, and may retire all Prior Lien stock in cash, obtain-ing a bank loan for funds required in excess of $16,500,000.

3. (Formerly NEPSCO's Alternative 3; now made an integral part of the plan, by the Commission's proviso in its approval.) Prior Lien stockholders will also receive Certificates of Contingent Interest as evidence of their right to receive additional payment beyond the amount received under (2) above, but not exceeding $20 per share for the $7 series and $10 for the $6 series, and such compensation for delay as shall be finally determined, these certificates to be registered and transferable, and to become void in case a final order shall determine no additional amount is payable, or in case they are not presented within five years of a final determination that an additional amount is payable. This contingent obligation is to be guaranteed by a deposit of $4,000,000 with the Plan trustee, under an Escrow Deposit Agreement, a sum estimated to be amply adequate to cover the maximum amount payable, plus reasonable interest, expenses, and fees.

For a more detailed and exhaustive discussion of the background of this proceeding and description of the plan, reference is hereby made to the Findings and Opinion of the Commission.[9]

---

[8] Comparative data concerning these two classes are contained in the following table presented by the Commission in its findings and opinion. Both types are without par value. Excepting the dividend rate, the only difference exists in the event of voluntary liquidation and redemption, in which the $7 series is entitled to $120 a share plus accrued dividends and the $6 series is entitled to $110 a share plus accrued dividends. On involuntary liquidation, each series is entitled to $100 a share plus accrued dividends. The dividend arrears for each class is adequately shown.

| Class of Stock | No. of Shares | Stated Value | At $100 Per Share Plus Accrued Dividends | | Call Price Including Arrears | |
|---|---|---|---|---|---|---|
| | | | Per Share | Total | Per Share | Total |
| Preferred—No Par Prior Lien | | | | | | |
| $7 Series | 118,747 | $11,478,877 | $100 | $11,874,700 | $120 | $14,249,640 |
| Arrears | | | 71.604 | 8,502,780 | 71.604 | 8,502,780 |
| | | 11,478,877 | 171.604 | 20,377,480 | 191.604 | 22,752,420 |
| $6 Series | 60,000 | 5,205,000 | 100 | 6,000,000 | 110 | 6,600,000 |
| Arrears | | | 61.375 | 3,682,500 | 61.375 | 3,682,500 |
| | | 5,205,000 | 161.375 | 9,682,500 | 171.375 | 10,282,500 |
| Total Prior Lien | | 16,683,877 | — | 30,059,980 | — | 33,034,920 |

[9] Holding Company Act Release No. 7511. To be found on pages 3 to 8 of the Commission's printed copy.

■ The Court subscribes to the view taken by Judge Leibell In the Matter of Electric Bond & Share Co., D.C.N.Y.S.D. 1946, 73 F.Supp. 426, 443, "The province of the District Court in a § 11(e) enforcement proceeding is that of a reviewing authority * * * The court cannot amend or modify the plan and then enter an order of approval since § 11(e) provides that the plan must in the first instance be approved by the Commission."

■ The Court must consider in making its findings the findings made by the Commission, and, if satisfied that these findings have been made after fair hearings, and that the plan is fair, equitable, and appropriate, and supported by substantial evidence, the Court should approve it. An examination of the Findings and Opinion of the Commission convinces this Court that all parties in interest were afforded every opportunity to be heard, that all evidence submitted was given careful consideration, and that due weight was given to the arguments and contentions of the various counsel who participated in the numerous hearings.

Contrary to the statements of one of the objectants, this Court is satisfied that the Commission paid more than "lip service" to the standards of the evaluation of rights surrendered in a simplification proceeding occasioned by the Act, as set forth in Otis & Co. v. S.E.C., 323 U.S. 624, 65 S.Ct. 483, 89 L.Ed. 511. The Commission made a reasonable attempt to fix the value of the Prior Lien stock on a going concern basis, apart from the impact of Section 11. A brief review of the Commission's reasoning will indicate the basis for the confidence of the Court that discretion has not been abused.

In the first place, the Commission held that retirement of the Prior Lien stock following an order of the Commission that NEPSCO either adopt a one-stock structure or liquidate was not a voluntary redemption within the meaning of the Company's by-laws. Certain Prior Lien objectants have made much of the fact that the Commission's order of May 2, 1941 gave NEPSCO an election and that NEPSCO in choosing one means of compliance over the other was performing a "voluntary" act, such that Prior Lien stockholders merited the call premiums of $20 for the $7 series and $10 for the $6 series.

These proceedings, however, are the result of the application of the provisions of the Act itself. The action of NEPSCO is basically the result of compulsion. The election goes only to the procedural aspects of the case. The situation invites analogy. The court in City National Bank & Trust Co. of Chicago v. S. E. C., 7 Cir., 134 F.2d 65, at page 67 refers to the instance of a man who enlists in the Army at a time when his being drafted is imminent. In such a case, the action taken would not be commonly understood as voluntary. Of course, fact situations differ, and it is true that this Court has had no case called to its attention where compliance with an alternative order was in issue. But this Court feels that to attach a consequence to this form of order directly opposed to that given an order not providing for company election would be to deprive the Commission of an opportunity to bring about changes contemplated by the Act with a minimum of interference with the internal workings of business. Not only, therefore, is the Commission's understanding of NEPSCO's "election" in accord with the common sense view but it is a step in the direction of minimizing needless friction between government regulation and private business. As Justice Reed stated in Otis & Co. v. S. E. C., 323 U.S. 624, at page 638, 65 S.Ct. 483, at page 490, 89 L.Ed. 511, "We must assume that Congress intended to exercise its power with the least possible harm to citizens."

■ This Court finds, therefore, as did the Commission, that the proposed retirement is not a voluntary redemption.

■ A second determination of the Commission, objected to by certain common stockholders of Northern New England[10] and certain Prior Lien stockholders

---

[10] Representing a minority of Northern New England common stock, the company being otherwise represented in these proceedings by Mr. Leon Walker, who supported the Commission's findings in all particulars.

of NEPSCO, was the setting apart of the question of value incident to the Prior Lien stock over and above the $100 plus accrued dividends for future decision, payment of any possible amount being guaranteed by the escrow deposit. The attitude expressed by objections was that it was improper to go at the problem of evaluation in a piece-meal fashion. No authority for this position, however, was cited, and this Court feels that the involved problems in this liquidation make the disposition of issues in installments not only fair and equitable but eminently sensible.

All parties to the hearing expressed their keen interest in realizing the tax advantage afforded by Supplement R of the Internal Revenue Code. To stress this objective and at the same time to press for an immediate determination of the issue as to whether there is a fair investment value in the Prior Lien stock rights over what the Commission has found to be the indisputable minimum is to wish to "have one's cake and eat it too." As all interests are adequately protected by the Escrow Deposit Agreement and the Certificates of Contingent Interest, the procedural objection is dismissed as not being sound.[11]

A third objection was made by certain common stockholders of Northern New England Company, a parent holding company of NEPSCO, represented by Samuel J. Levinson, that fair treatment had been denied them by refusing to admit them as parties to the proceedings before the Commission. Mr. Levinson was given leave to be heard, introduced testimony, filed briefs, cross-examined witnesses, and made oral arguments. His clients were placed in the status of "limited participation" with six other groups of stockholders, it being the procedure of the Commission under their Rule of Practice XVII(d) to admit only companies as "parties."

Section 19 of the Act, 15 U.S.C.A. § 79s, gives the Commission discretion by saying that it "*may* admit as a party any representative of * * * security hold-ers, or any other person whose participation in the proceedings may be in the public interest * * *." (Emphasis supplied.) At the hearing before this Court, it did not appear that Mr. Levinson or his clients suffered any disadvantage or were prejudiced in any way by the Commission's classification of status. This in no way constituted an abuse of discretion.

The fourth objection in the present proceedings concerned the main substantive issue of placing a minimum valuation on the Prior Lien stock of $100 a share plus accrued dividends. Thousands of pages of exhibits were studied and the opinions of experts called by the various parties and groups at the hearings were carefully weighed and considered. The Commission studied and analyzed the various intricate and complex factors which are part and parcel of a business enterprise of the magnitude of NEPSCO. It considered the influence of the provisions in the By-Laws with regard to liquidation preferences, although rejecting, as seen above, the contention that the Prior Lien stock could invoke the call premium, as such. It looked at the past ten years of NEPSCO's operation, taking into consideration both the corporate and the consolidated coverage of fixed charges and the Prior Lien stock dividend requirements. It gave particular weight to the estimate of heads of the several operating subsidiaries concerning the prospects of future earnings, embracing future prospects of wage scales, rate scales, fuel costs, tax rates, depreciation policy, and construction programs, drawing the conclusion that these three companies reasonably expect in 1947–1949 earnings "slightly more favorable than the companies have experienced to date. These estimates appear to reflect the continuation of a moderate growth in domestic, commercial, and industrial electric energy sales."[12] The Commission also allowed for the fact that, were NEPSCO not to liquidate, the $16,500,000 received in the sale of its industrial assets would have been invested in the common stocks of its

---

[11] See In the Matter of Electric Bond and Share Co., D.C.N.Y.S.D., 73 F.Supp. 426, Leibell, D. J., where a similar procedure was followed, and approved.

[12] Printed copy of Findings and Opinion of Commission, p. 21.

subsidiaries and yielded a substantial return.

The Commission paid considerable attention to the expert witness produced by the objecting common stockholders of Northern New England, pointing out that his top estimate of earnings available to the common stock of the operating subsidiaries was lower than the actual earnings, as adjusted, in the ten-year period, 1937–1946.[13] This Court's analysis of the extensive brief filed by counsel for these Northern New England stockholders reveals a large number of objections to assumptions and percentages employed by the Commission. Basing his conclusions on an array of rates and assumptions opposed to those of the Commission, the objectants' expert witness, Mr. Bauer, estimated a top value of $115 per share for the $7 series and $100 per share for the $6 series.

It is evident to the Court that the Commission took into account every factor discussed by Mr. Bauer; the basic disagreement concerns the proper weight to be assigned each. The data available to the Commission were reliable and the assumptions and methods reasonable. The conclusions of the Commission were supported by substantial evidence.

█ This Court finds, therefore, as a fact that the plan submitted by NEPSCO and amended pursuant to order of the Commission is appropriate to effectuate the provisions of Section 11 of the Act and is fair and equitable to all classes of stockholders in NEPSCO, the amount determined immediately payable to the holders of the Prior Lien stock being no more than the just equivalent of their rights, yet constituting a minimum value beyond reasonable dispute, and the Certificates of Contingent Interest providing adequate protection for whatever rights may later be determined to exist.

As a conclusion of law, the plan as amended to comply with the Commission's order should be and is hereby approved by this Court and an appropriate order entered to enforce and carry out its provisions, granting the relief prayed in the application presented to this Court by the Commission.

A form of order may be submitted.

---

[13] These adjustments reflect present capitalizations, present depreciation policies, the elimination of transportation properties not owned or operated by subsidiaries, and certain other minor adjustments made by NEPSCO.