In re NEW ENGLAND PUBLIC
SERVICE CO.

No. 477.

United States District Court
D. Maine, S. D.

Nov. 29, 1950.

Harry G. Slater, Myron S. Isaacs, Robert E. Olson, and Harlow B. Lester, all of Washington, D. C., for applicant Securities and Exchange Commission.

Charles W. Allen, Leonard A. Pierce, Portland, Me., E. H. Maxcy, Augusta, Me., Charles A. Coolidge, Boston, Mass., for NEPSCO.

Robert Bernstein and Samuel J. Levinson, New York City, for Esther Vogel, et als.

Arthur E. Whittemore, Boston, Mass., for Russell B. Stearns.

John N. Worcester, Boston, Mass., for State St. Inv. Corp., George Putnam Fund of Boston, Fidelity Fund, Inc., Carl P. Dennett, Preston Moss & Co., Harry S. Middendorf.

A. Albert Minton, New York City, for Martin Protective Committee for Preferred Stockholders of NEPSCO.

Leon V. Walker, Portland, Me., for Northern New England Co.

Morris L. Forer, Philadelphia, Pa., for Participant David J. Greene, preferred stockholder for NEPSCO and common stockholder of Northern New England Co.

Franklin G. Hinckley, Portland, Maine and George F. Baer Appel, Philadelphia, Pa., for the Arthur E. Spellissy Committee for Preferred Stockholders.

CLIFFORD, Judge.

This is an application by the Securities and Exchange Commission[1] for enforcement of its supplemental order directing payment of certain additional sums to the former holders of the $6 and $7 series of Prior Lien Preferred Stock[2] of the New England Public Service Company,[3] by reason of the retirement of that stock pursuant to an earlier order of the Commission. Issues are raised relating to the valuation of the stock by the Commission, and to its allowance of compensation for the delay in payment of the additional amounts now found due to the former holders of the prior lien stock.

[1]. Referred to herein as the Commission.
[2]. The two series collectively are referred to herein as the prior lien stock.

[3]. Referred to herein as NEPSCO.

It is not necessary here to rehearse at length the early history of this case. The opinion of this court dated August 15, 1947, In re New England Public Service Co., D.C., 73 F.Supp. 452, details the progress of the case up to that date. For the purposes of the present proceeding, the following facts are deemed sufficient.

On May 2, 1941, the Commission, exercising its authority under section 11(b) of the Public Utility Holding Company Act of 1935, 49 Stat. 820, 15 U.S.C.A. § 79k(b),[4] entered an order requiring either the recapitalization or the liquidation of NEPSCO, Northern New England Company, 9 S.E.C. 224 (1941). Of these alternatives, NEPSCO elected liquidation; and in 1945 the company sold its industrial assets, as well as a small water company, for $16,500,000. Ordinarily, the sale of these industrials by NEPSCO would have subjected the company to a capital gains tax estimated at $3,200,000. However, under Supplement R of the Internal Revenue Code, Int.Rev.Code § 371, 26 U.S.C.A. § 371, Congress had provided for nonrecognition of such gain under certain circumstances. If NEPSCO were to avoid having this gain taxed, it was required to apply the proceeds of the sale, within twenty-four months from the date of its receipt, in accordance with an order of the Commission which should recite that the expenditure was necessary or appropriate to the integration or simplification of the holding company system of which NEPSCO was a member. The twenty-four month period was due to expire on October 30, 1947. Various proposals were made as to the possible utilization of the $16,500,000. Most of the parties considered it important to avoid the $3,200,000 tax, and felt that prolonged litigation should not stand in the way of legally avoiding it.

The plan finally approved by the Commission, and confirmed by this Court, 73 F.Supp. 452, was carried out in the following manner: Both series of prior lien stock were retired on October 10, 1947, the owners of the stock receiving immediately the par value, or $100 per share, plus all accrued dividends, in cash or equivalent securities. Holders of $7 stock received a total of $171.7986 per share, and holders of the $6 stock a total of $161.5417 per share. An escrow fund of $4,000,000 was created at the same time, to cover the amounts, if any, by which the fair investment value of the prior lien stock should be found to exceed the amounts already paid to the holders of the stock. Certificates of contingent interest were issued to the holders of the stock, representing their proportionate shares of any payment ultimately to be made from the escrow fund.

Appeals were taken by several parties from the action of this Court in confirming the above plan; but by leave of the Court of Appeals for this Circuit hearing of these appeals has been continued pending decision of the present issues by this Court.

It was the function of the Commission to determine the fair investment value of the prior lien stock as of October 10, 1947, and compute the additional amounts, if any, payable to the holders of the certificates of contingent interest. The maximum amount which could be found due to the holders of certificates of contingent interest was the voluntary call premium on the prior lien stock;[5] that is, $100 per share, plus accrued dividends, plus $20 for each share of the $7 series, and $100 per share, plus accrued dividends, plus $10 for each share of the $6 series, together with any compensation found proper for delay in payment. Decision by the Commission was delayed, pending a ruling by the United States Supreme Court on similar issues arising in another proceeding. After decision was reached by the Supreme Court in that case, Securities & Exchange Comm. v. Central Illinois Securities Corp., 1949, 338 U.S. 96, 69 S.Ct. 1377, 93 L.Ed. 1836, the Commission reached its conclusions in the present matter, and entered its supplemental order that a further payment of $12.25 should be made for each share of the $7

---

4. The Public Utility Holding Company Act of 1935 is referred to herein as the Act.

5. Securities & Exchange Comm. v. Central-Illinois Securities Corp., 1949, 338 U.S. 96, 145, 69 S.Ct. 1377.

series of prior lien stock, and a further payment of $2.25 should be made for each share of the $6 series of prior lien stock. The Commission also ordered compensation for the delay in payment of these amounts, at the rate of 5.5% per annum, from October 10, 1947 until the date of payment.

On July 28, 1950, the Commission filed its supplemental findings and opinion in support of its order. Thereafter, NEPSCO filed with the Commission an amendment of its amended plan,[6] conforming to the Commission's opinion and order; and it is that amendment which is now before this Court for enforcement.

Able briefs have been filed by three groups of counsel, each one of which has treated in detail the various steps of reasoning and the assumptions upon which such reasoning is based leading to the ultimate decision as to value. The Martin Committee for preferred stockholders and the New England Public Service Company have, before this Court, supported the Commission's plan, notwithstanding earlier differences with the Commission. The Protective Committee for holders of the common stock of NEPSCO and of the shares of beneficial interest of Northern New England Company (the Greene Committee) while critical of the Commission's valuation, does not, for reasons stated in its brief, press its objection in this regard, but does object to the 5.5% rate of interest, allowed by the Commission, as too high. Esther Vogel and the Northern New England Company, common stockholders, have attacked the Commission's plan both on the ground that an excessive award was made to holders of the prior lien stock, and on the further ground that excessive compensation for the delay in payment was awarded by the Commission. The State Street Investment Corporation and Russell B. Stearns, both holders of the prior lien stock, have urged that even though the present retirement of the prior lien stock did not constitute a voluntary liquidation, yet the fair investment value of the prior lien stock was, nevertheless, equal to the call price. The Spellissy Committee for preferred stockholders appeared, but took no position with reference to the plan.

It would serve no useful purpose to discuss in full all of the arguments put forward by these various groups. As stated by the United States Supreme Court in Securities & Exchange Comm. v. Central Illinois Securities Corp., supra, 338 U.S. 96, 69 S.Ct. 1377, 93 L.Ed. 1836, it is not the function of the district court in a proceeding like this to arrive at its own independent appraisal of the evidence before the Commission. Rather, it is this court's duty to accept as conclusive the findings of the Commission as to the facts, including the fact of value, if these findings are arrived at in accordance with legal standards and are supported by substantial evidence.

I. In detail, the State Street Investment Corporation and Russell B. Stearns argue through their counsel that the full redemption price should be adopted as the fair investment value of the prior lien stock, on the basis that NEPSCO elected the course of action leading to this determination, and that sound business judgment in October, 1947, dictated that all arrears would have been paid in 1947 and that the prior lien stock would then have been called. This court has already ruled that such a redemption as that which is taking place in the present case is not a redemption within the terms of a corporate charter providing for a voluntary call price. D.C., 73 F.Supp. 452. This court sees no reason for reopening this issue at this time, despite the earnest suggestion in the briefs above referred to.

It follows that the measure of what is fair and equitable to the holders of the certificates of contingent interest was properly determined by the Commission in terms of investment, or going-concern value. Securities & Exchange Comm. v. Central Illinois Securities Corp. supra, 338 U.S. at pages 129 et seq., 69 S.Ct. 1377, 93 L.Ed. 1836; Otis & Co. v. Securities and

6. The plan originally proposed by NEPSCO provided for payment to the prior lien stockholders of amounts equal to the redemption prices of the stocks.

348

Exchange Comm., 1945, 323 U.S. 624, 65 S.Ct. 483, 89 L.Ed. 511; In re Pennsylvania Edison Co., 3 Cir., 1949, 176 F.2d 764, 768.

The pertinent question, with respect to the call price representing the equitable equivalent of the investment value of the prior lien stock on a going-concern basis, is whether redemption of that stock would have been inevitable or probable, absent the compulsions of section 11 of the Act. This Court is in accord with the reasoning of the Commission that the common stockholders, having the voting control on any proposal to retire the prior lien stock, would not have been likely to subordinate their hopes for dividends to the extent which such a retirement would have made necessary. This issue is largely in the field of conjecture and this court is not to say that the Commission erred in their findings in this regard.

■ II. It is argued by counsel for Esther Vogel that the history of market quotations on the prior lien stock must be given controlling weight in determining the fair investment value of that stock; and that as a matter of law a preferred stock with substantial arrears of dividends could not have an investment value of more than par plus arrears. Market quotations may, in a given case, be entitled to some weight as evidence of the public's estimate of the investment value of a stock. But such quotations are frequently distorted by such factors as a company's policy of reinvesting income instead of using it for the payment of dividends, or the policy of a company or particular investors in making purchases or sales of the stock. Distortions arise when sales are few or in large blocks. It is well known that individual investors may differ from the general public in their estimate of the investment value of a stock, and that, on occasion, the judgment of such individual investors proves correct. In the present case, the market history of the prior lien stock since 1941 reflects the reaction of the investing public to the fact that NEPSCO was in reorganization and involved in litigation before the Commission and this court. See The

Middle West Corporation, S.E.C. (1946), Holding Company Act Release No. 6606, plan enforced, In re Central & Southwest Utilities Co., D.C.Del.1946, 66 F.Supp. 690.

■ This court cannot find from the evidence presented here that the Commission has erred in failing to give more weight to market quotations, or in assigning to a stock with substantial arrears a valuation in excess of par plus arrears.

III. It will be helpful to summarize the process followed by the Commission, in arriving at its estimate of the fair investment value of the prior lien stock. The Commission first estimated NEPSCO's probable net income for the years immediately following 1947. Then, assuming distribution of that income in payment of current and accrued dividends on the prior lien stock, the Commission found that arrears on that stock would be paid up in approximately five years. The Commission then assumed that the prior lien stock would be called, at the voluntary call price, at the end of the five year period. Then, estimating the worth in 1947 of the expectation of receiving all the payments previously assumed by it, the Commission gave the total of this 1947 value as its estimate of the fair investment value of the prior lien stock on October 10, 1947. The fair investment value, thus found, exceeded the amounts already paid to the former holders of prior lien stock; and the additional payment of $12.25 on the $7 prior lien stock and $2.25 on the $6 prior lien stock, now ordered by the Commission, represent the amount of this excess.

The principal areas of disagreement, as respects the foregoing process used by the Commission, are as follows:

(a) The forecast of earnings of the NEPSCO utility system and the estimate of receipts by NEPSCO itself from the earnings of the system.

(b) The assumptions concerning the use of $16,500,000 which had been received by NEPSCO from the sale of its industrial interests.

(c) The discount rates selected by the Commission as reflecting the value on October 10, 1947, of the future payments of

arrears and principal on the prior lien stock.

With respect to the forecast of earnings of the NEPSCO operating system, judged as of October 10, 1947, this court cannot say that the estimate by the Commission of NEPSCO's foreseeable earnings lacks the support of substantial evidence or reasonable inference from the evidence. The Commission properly considered the actual assets, obligations and prospects of the company as they were on October 10, 1947, the date when the prior lien stock was surrendered. Securities & Exchange Comm. v. Central Illinois Securities Corp., supra, 338 U.S. at pages 139, 148, 69 S.Ct. 1377, 93 L.Ed. 1836; In re Pennsylvania Edison Co., supra, 3 Cir., 176 F.2d at page 769. The Commission properly refused to consider evidence of abnormal drought conditions and market operations developing after the retirement date. It did take into account the existence of construction projects designed ultimately to balance out the uncertainties of water supply. The Commission's assumptions as to the prospective demand for power and the prospective costs of operation are not unreasonable. The estimates reached by the Commission as to the prospective earnings of the NEPSCO operating system and of NEPSCO itself are not arbitrary or capricious, even though with the aid of hindsight it can be observed that the actual earnings of NEPSCO differed by a considerable percentage from the estimate.

Likewise, the Commission acted reasonably in assuming that the $16,500,000 fund, realized from the sale of NEPSCO's industrial subsidiaries, would be invested, but for the impact of the Act, in additional shares of the common stocks of NEPSCO's utility subsidiaries, or in comparable securities. Bearing in mind that going-concern value was the basis of the Commission's findings, it was appropriate to assume that the $16,500,000, realized from the sale of income-producing capital assets, would be reinvested in other income-producing capital assets, rather than distributed in immediate payment of arrears on the prior lien stocks. It was proper and reasonable to assume that such reinvestment would be in securities which the law permitted NEPSCO to hold; and the Commission acted reasonably in assuming investment in securities comparable to those already owned by the company, rather than in securities of greater or lesser risk.

There was no occasion for the Commission to explore what would have been the situation had the industrials not been sold. The $16,500,000 fairly represented, for all purposes, the value which the industrial securities would have had if they had been retained. Securities & Exchange Comm. v. Central Illinois Securities Corp., supra, 338 U.S. at page 143, 69 S.Ct. 1377, 93 L.Ed. 1836.

The third major area of disagreement with respect to valuation relates to the Commission's selection of capitalization or discount rates, in fixing the value, on October 10, 1947, of future payments of income and principal to be anticipated on that date by the holders of the prior lien stock. The former holders of prior lien stock seek a lower capitalization or discount rate and a consequent higher valuation of the company and its future income, on which to base the valuation of their stock. By the same token, some holders of junior stock press for a higher rate, yielding a lower valuation of the company and a lower valuation of the prior lien stock. These differences are clearly within the range where reasonable, intelligent and informed minds may differ.

The record shows that the Commission gave careful consideration to all factors which could properly go into the selection of these rates. The ultimate choice of rates, involving as it does an informed judgment of the financial strength of the company and the certainty or uncertainty of its future income, is a matter peculiarly within the competence of the Commission. There is no evidence that the Commission acted arbitrarily in performing this part of its duty, or that the rates selected are inconsistent with one another. On the contrary, the record shows a careful and conscientious effort by the Commission to reach a fair conclusion. This

**350**

court finds that the rates used by the Commission were supported by substantial evidence and were reasonable.

Other arguments challenging the correctness, fairness, and appropriateness of the Commission's valuation are without merit and need not be considered here.

IV. The final issues in this proceeding concern the compensation allowed by the Commission to the former holders of the prior lien stock, for the delay in payment of the amount now found to be due them. The Commission fixed this compensation at 5.5% per annum. The holders of NEPS-CO common stock object to the allowance of any compensation at all, under the circumstances; and if compensation is to be allowed, they argue that 5.5% is plainly excessive.

■ The decision of the Commission to compensate the holders of certificates of contingent interest for delay encountered in receiving payment of their just due was that a rate of 5.5% per annum by way of interest on the additional amount to be paid such holders represented the return which the holders would have enjoyed had they obtained their equitable equivalent on October 10, 1947, and invested the proceeds in equivalent securities. Some objectors oppose the allowance of any compensation for delay. However, it seems an inevitable result of the application of the fair and equitable standard that compensation for delay be paid to the prior lien stockholders. As the Court of Appeals for the Third Circuit states: "In addition to the difference between the amount then paid and the amount which would be payable under the approved plan, the Commission exercised a power it had reserved to award the preferred stockholders a sum sufficient to give them a return thereon measured by the return they would have received had the stock remained outstanding. This is fair and equitable. It put the preferred stockholders in a position substantially the same as if they had received the full value of their stock at the time of the consummation of the plan. Securities and Exchange Commission v. Central-Illinois Securities Corp., supra (338 U.S. at page 153, 69 S.

Ct. 1406, 93 L.Ed. 1836)." In re Pennsylvania Edison Co., 176 F.2d at page 769.

Counsel for some of the stockholders, and particularly the protective committee for common stockholders, have attempted to differentiate this case from those cases, and from other cases where the Commission has allowed compensation for delay, on the basis of the lack of arrears on the stocks retired in those cases and other factual or policy differences. This court is unable to find a basic difference which would indicate that in the present case the holders of prior lien stock should not be compensated for the delay.

■ This court finds that the Commission did not err when in exercising its expert judgment it found a rate of 5.5% fair under the circumstances of this case.

■ Therefore, having considered that the findings of fact made by the Commission were supported by substantial evidence; that the plan was arrived at in accordance with legal standards and is fair and equitable and appropriate to effectuate the provisions of the Act, this Court approves the plan as submitted by the Commission, in its entirety. The proposed order filed by the Commission is adopted as the Order of this court.