524

In re UNITED CORP.

Civ. A. No. 1146.

United States District Court
D. Delaware.

March 2, 1954.

David F. Anderson (of Berl, Potter & Anderson), Wilmington, Del., Patrick H. Sullivan and William T. Farley (of Whitman, Ransom, Coulson & Goetz), New York City, for United Corp.

Myron S. Isaacs, Chief Counsel, Division of Public Utilities, W. R. Nowlin and Herbert D. Miller, Washington, D. C., for Securities and Exchange Commission.

Louis Boehm, New York City, John F. Davis, Washington, D. C., and Randolph Phillips, pro se.

LEAHY, Chief Judge.

In 1948, the Securities and Exchange Commission approved[1] a plan for the involuntary retirement of preference stock filed by the United Corporation under § 11(e) of the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79 et seq. Upon the Commission's application, this court in 1949 enforced the plan as approved.[2] Subsequently, all appeals were either withdrawn or dismissed, and the plan was consummated. Jurisdiction over further proceedings incident to the plan including the payment of fees and expenses was reserved by both the Commission and this court. Fourteen fee applications were made to the SEC, public hearings held, and the SEC decision[3] issued on June 4, 1952, granting three in the sums requested, awarding substantially reduced sums to eight applicants, and wholly denying three applications. In the present proceeding, the SEC seeks court enforcement of its fee determinations under §§ 11(e) and 18(f) of the Act. Two applicants have objected to the amounts of the fees allowed them. Cross-objections have been made by various parties to allowances granted to eight fellow fee applicants. The issues are thus joined. The three applicants whose requests were denied have not appeared to contest the SEC decision, and, therefore, no issues have been raised as to them.

A capsule recapitulation of United's recent history under the Act is appropriate. In August 1943, the SEC issued an order in proceedings brought under § 11 (b) (2) of the Act directing United to change its existing capitalization to one class of stock and to take such action as would terminate its existence as a holding company.[4] Thereafter, United filed two plans providing for the voluntary exchange of its $3 cumulative preference stock (entitled to $50 per share upon liquidation and $55 per share upon redemption plus accrued dividends) for portfolio securities and cash.[5] Through these two exchange plans, United reduced the amount of preference stock outstanding to somewhat more than a million shares.

A third plan (the "retirement plan"), with respect to which the instant appli-

1. Holding Company Act Release (HCAR) 8409, August 9, 1948.

2. In re United Corporation, D.C.Del., 82 F.Supp. 196.

3. HCAR 11290, June 4, 1952.

4. The United Corporation, 13 S.E.C. 854 (1943).

5. The United Corporation, 17 S.E.C. 404 (1944); 19 S.E.C. 190 (1945); HCAR 5859 (June 11, 1945).

cations for fees and expenses have been made,[6] was filed by United in June 1947 providing for the retirement of the remaining outstanding preference stock by exchanging for each share a package of portfolio securities and cash.

Various stockholders opposed this plan. A preference stockholders committee, through counsel,[7] objected to its fairness and proposed the exchange be voluntary rather than compulsory. Counsel [8] for certain institutional holders of preference stock offered testimony and exhibits of an expert witness in opposition to the plan, and counsel [9] for certain individual preference shareholders also introduced evidence with respect to fairness. A beneficial owner [10] of common stock proposed retirement of the preferred by cash derived from the sale of portfolio securities to United's common stockholders through the use of purchase warrants. However, after an amendment by United slightly changing the contents of the original exchange package, the SEC approved and this court enforced the plan proposed by United.[11]

The applicable standards which the Commission set for itself to gauge the amount of compensation due the applicants are identical with those set in the Engineers Public Service Company fee decision,[12] with the addition of the factor of applicants' trafficking in United's stock. Opinion on the fee aspects of the Engineers case has recently been filed. See In the Matter of Engineers Public Service Company, D.C.Del., 116 F.Supp. 930. Reference is made to that decision for treatment of the standards there applied by SEC and equally applicable here. The application of the legal standards of Engineers to the dissimilar factual matter of United's retirement phase results in awards immune to dollar comparison. Basic dissimilarities in the two cases portend the difference in results. Engineers' complexity and pioneering in legal problem for which there was no precedent are not found here. Engineers' contribution to development of reorganization law in general was, according to the profession, epochal in comparison with United's personal problem in valuation of the exchange package. Engineers ran the gauntlet from the SEC to the Supreme Court, success alternating among the contestants, as the litigation swung its way. United proceeded from the SEC to this court without prosecution of appeal or change in result. United did not present a legal challenge of Engineers' calibre. More than that, the cross-objections of fee claimants raise issues having no counterpart in Engineers, wherein neither management nor applicants objected to the fees requested. Separation of the pertinent issues governs the order in which the applicants have been grouped, their applications and the cross-objections considered.

### Phillips and Davis

1. Fees in the aggregate amount of $46,000 and reimbursement of expenses totaling $42,201.14 were requested by Phillips. The SEC awarded him a fee of $2,000 and $370.84 for expenses. The

6. Subsequently, United filed a fourth plan, providing, among other things, for the transformation of United from a public utility holding company to an investment company. This plan, as amended, has been approved by the SEC, HCAR 10614 (June 15, 1951) and HCAR 10643 (June 26, 1951).

7. Boehm & Fischman; Hays, St. John, Abramson & Schulman; and Kurland & Wolfson.

8. Townsend, Elliott & Munson.

9. These were the three fee applicants whose requests the Commission wholly denied and who brought no objections to this court.

10. Randolph Phillips, who, although not a lawyer, presented his own case for the greater part of the proceedings. Phillips for a time also retained counsel, applicant John F. Davis.

11. Whitman, Ransom, Coulson & Goetz, John J. Burns, and Southerland, Berl & Potter were counsel for the United management.

12. HCAR 11096 (March 26, 1952), p. 4.

principal reason for the great divergence between requests and the allowance is the SEC denied Phillips' request for compensation based on his activities relating to United's 1944 plan and on his proxy contests with United's management in 1943, 1944, and 1947. Upon this decision the SEC then narrowed its consideration to Phillips' allocation of $6,000 of his total fee request and $370.84 of the total expenses to the proceedings relating to the retirement plan. Thus, of the prorated request for a $6,000 fee, $2,000 was allowed plus all of the $370.84 prorated expenses.

The record shows Phillips' activities pertaining to the retirement plan consisted of opposition to United's plan before the SEC, profert of a substitute plan of his own, a motion in this court for a change of venue in the enforcement proceedings, a brief and argument in this court opposing enforcement, and a motion for stay of enforcement of the court approved plan in the Court of Appeals and argument thereon. Success did not attend any of these efforts to which Phillips approximates devotion of 300 hours. For a part of the proceedings before the SEC,[13] Phillips' counsel, Davis, was his "voice", as the attorney himself characterized his role at the hearing. As such counsel, Davis himself applied for a $5,000 fee for his approximated 20 days activity and was allowed $2,000 by the SEC. However, despite his retention of counsel, the services rendered by Phillips were those ordinarily performed by an attorney-at-law. This factor is the foundation of the first objection made by United in its opposition to any allowance to Phillips. Commissioner Millonzi also placed emphasis on Phillips' lay status in

his dissent [14] to the Commission's allowance of a fee to the applicant.

■ 2. The second of the SEC's Rules of Practice [15] provides that "An individual may appear in his own behalf" and further "A person may be represented in any proceeding by an attorney at law", with no other manner of representation permissible. For part of the proceedings before the SEC, Phillips utilized both types of representation. In its findings,[16] the SEC adverts to Phillips as "the beneficial owner of 1,100 shares of United's common stock who appeared on his own behalf" and to his counsel as one "who also represented him (Phillips) in his stated capacity as attorney-in-fact for other common stockholders". A footnote clarifies this reference by citing Rule 2, explaining, "Phillips is not a lawyer and, therefore, while he could appear on his own behalf, he could not represent others even though he held authorizations to act as attorney-in-fact." In the light of its allowances, the SEC would seem to be compensating Phillips for his self representation and Davis for representing Phillips in the latter's capacity as attorney-in-fact for other common shareholders. Since SEC can best interpret and police its own rules of practice, I must accept its majority decision on this point.[17] Phillips' fee application is delimited to his efforts before the SEC and the courts as a lay representative of "Phillips the stockholder".

■ 3. Likewise, I sustain the SEC in its findings [18] that the present proceeding is not the appropriate one to fix Phillips' fees for services directed to the 1944 plan or to the 1943–47 proxy contests. Only services relating to the retirement plan are here being evaluated.

13. Phillips appeared at the Commission hearings, cross-examined various witnesses during several days absence of his counsel, Davis, testified in support of his plan, and prepared and submitted several exhibits thereto.

14. HCAR 11290, pp. 21–24, supra, n. 3.

15. 15 U.S.C.A. following § 78(u).

16. HCAR 11290, p. 12.

17. At the beginning of its hearings, the SEC could have profitably stifled all nascent misconceptions by a forthright announcement of the status in which each one appearing would be heard.

18. HCAR No. 11290, pp. 12–19.

The SEC had ample evidence in which to root its denial of any allowance to Phillips "in these proceedings"[19] for his activities in other phases of United's transformation. Applicant's activities even antedated the filing of the retirement plan. Phillips' insistence of some wholesome, overall effect on the retirement plan from his other activities is quite nebulous and without demonstrable connection. I construe HCAR 11290 as properly deciding Phillips' prior activities were not compensable in the instant retirement plan fee applications.[20]

4. There remains Phillips' allocated fee request of $6,000 and $370.84 of expenses directly attributed to his retirement plan services. All of the prorated expenses were allowed by the SEC. I, too, approve $370.84 disbursement as being equitable. Of the $6,000 request, $2,000 was awarded for fees. The reasons for this are given in the Commission's words:[21] "Thus in the proceedings on the retirement plan Phillips was entirely unsuccessful, both before us and the courts, in his attempt to defeat United's plan and substitute his own plan for it. The testimony presented by him and his cross-examination of witnesses during his counsel's absence were ineffectual. In addition, to some extent he delayed the proceeding by pursuing, in his cross-examination, irrelevant lines of questioning. After a careful review of the record we find that Phillips' participation in the proceedings on the retirement plan conferred no demonstrable benefit upon the estate or its security holders and to a certain extent delayed the proceedings." As to the $2,000 award, the SEC said,[22] "However, Phillips was the only participant who asserted a position on behalf of the common stockholders in the present proceedings and he participated actively throughout the proceedings. We are of the view that, although he is not a lawyer and therefore may not be compensated for services of a legal nature, Phillips did perform services in these proceedings in the interests of the common stockholders as a class which under all the circumstances warrant modest compensation." While partially couched in terms of "no ultimate success—no pay"—which I found to be an improper standard when applied to the services rendered in Engineers—I agree with the SEC's award to Phillips. There can be no parallel to this shareholder representation in Engineers. Phillips' award, if any, is for representing himself, and the separate award to his attorney for representing other common shareholders can not be overlooked. The Phillips' "interests" are seen to have received a $4,000 award for counsel fees and all prorated expenses. In this perspective, the SEC was not as miserly toward Phillips as portrayed. The gist of the SEC's opinion questions the quality of Phillips' personal performance before it, another dissimilarity to Engineers. Necessarily, this judgment was of those best in position to pass on it. I do not find it devoid of support nor do I find substantial countervailing evidence. That judgment must stand and with it SEC's award to Phillips.

Although Davis originally applied for a $5,000 fee, he appeared in these proceedings to defend and urge approval of the $2,000 SEC allowance for the 20 days devoted to the matter. He worked

---

19. Throughout the findings as to Phillips, the Commission is careful to confine its decision of disallowance to the effect Phillips' other activities had on "these proceedings", No adjudication is actually made of the intrinsic worth of the earlier services in other phases of United's reorganization. The sprinkling of broad language in the opinion which would seem to justify Phillips' fears of a final adverse ruling on the compensability of his other activities is not a part of the Commission's holding, nor could it be in these retirement plan proceedings.

20. This leaves Phillips free to seek fees for activities not evaluated here when the proper occasion arises. Application has already been filed with SEC by Phillips for reimbursement of expenses in the proceedings relating to United's plan to become an investment company.

21. HCAR 11290, p. 14.

22. HCAR 11290, pp. 18–19.

with Phillips in preparing the substitute plan and supporting testimony, filed exceptions to the Division's findings and a supporting brief, and participated in oral argument at the Commission hearing. Davis was the only attorney who participated and asserted a position on behalf of the common shareholders. The compensation awarded is modest and justified under the circumstances. The Davis allowance will be approved.

■ 5. United's management, with more than token resistance, opposes any allowances to Phillips or Davis. The attack is two-pronged. The source of Phillips' authority to act as an attorney-in-fact, i. e., the 1947 proxies he held, is impugned as bereft of relationship to the retirement plan. However, the SEC decided[23] otherwise: "The proxies conferred authority not only to vote at the meeting [i. e., the 1947 annual stockholders meeting] but also to act as attorney-in-fact in subsequent proceedings before us and the courts." United's objection is only an assertion whereas the SEC opinion evidences some investigation of the proxy question. Moreover, since the extent of the proxy authority was inextricably woven into the SEC's admission of Phillips and Davis to the United hearings as bona fide shareholder representative under its Rules of Practice, the SEC proxy ruling should not be disturbed.

■ 6. The second United objection assumes the conclusion it seeks to prove. Citing the New England Power Association[24] principle compensation will be denied committees formed merely "for purposes of obstruction or to obtain compensation", United rests its argument on enumeration of ten of the reported cases of Phillips versus United, a phrase in the SEC opinion, and Commissioner Millonzi's dissent. These references are inapposite to the charge. The frequency of the name Phillips as a party in reported cases, even if rivaling that of Helvering, need indicate no more than enthusiastic industry. The SEC's reference to delays caused by Phillips was the reflection it cast on the quality of his services. The dissent does not rise beyond its bounds, the judgment of the minority. Other objections raised by United having been previously found valid, supra, I concur in SEC's allowances to Phillips and Davis.

Boehm & Fischman; Hays, St. John, Abramson & Schulman; Kurland & Wolfson; Preference Stockholders Committee and Secretary

7. Soon after the SEC hearings began on the retirement plan, a Preference Shareholders Committee[25] was formed, representing approximately 1500 shareholders owning more than 124,000 shares. A declaration was filed under Rule U–62 by the Committee. Boehm & Fischman and the Hays firm were employed as counsel,[26] senior partners of both having collaborated in the formation of the Committee. The Committee opposed the management plan as suspect, prepared and endorsed a proposal for a voluntary exchange of stock, urging payment of the $55 redemption price to preference shareholders. The three firms devoted a total of 2058 hours to the proceedings from the Commission hearings to the withdrawn appeal. All made one request for a fee of $50,000 and expenses of $1,690.58. One award of $2,-

23. HCAR 11290, p. 19, footnote 22.

24. HCAR 8751.

25. Committeemen were Carl Sherman, Stephen B. Gibbons, and John M. Chapman, who devoted an aggregate of 100 hours and held some six meetings. Joseph Rogers was Secretary and lists 75 hours of activity. Committee members requested $2,500 in fees and were each allowed $250 as was the Secretary who requested $1,500. United protests any award to them.

26. The Kurland firm entered the case only after this court had approved the plan and was engaged to assist in prosecuting an appeal upon the illness of Heilbron of the Hays firm. A total of 53 hours was expended in filing the record in the Court of Appeals and preparing two briefs supporting the motion to stay.

000 was made them as a fee plus all of the requested expenses. As one, all joined in protesting the decision and SEC's application to enforce it. United further salts their wounds by opposing any compensation to counsel or committee members.

The entire reasoning of the Commission is wrapped in these words:[27] "The Committee and its counsel were unsuccessful in their attempt to effect a change in United's plan. No affirmative testimony was offered in opposition to the plan and the cross-examination of the witnesses appearing in support of the plan was ineffectual. The Committee's proposal to make the exchange voluntary was not conducive to expeditious compliance with our order directing United to change its capitalization to a one stock basis. Their activities in the District Court and the Court of Appeals were unsuccessful. Accordingly we are unable to find that the services of the Committee and its counsel conferred any demonstrable benefit to the estate or its security holders. However, this Committee and its counsel represented the preference stockholders as a class and, in our opinion, they are entitled to modest compensation for providing that class representation."

The opinion reflects motivating factors: lack of success in attacking the management plan and in advocating the voluntary exchange proposal before the Commission and failure before the courts. An overtone critical of the quality of counsel's services may or may not have been intended by the reference to failure to present affirmative testimony opposing the plan and to the cross-examination as being "ineffectual". Whether the Commission felt such testimony was available and appropriate, yet unwisely omitted, or whether it simply recites the omission without criticism to

indicate limited scope of services is not clear. Since the record is devoid of any evidence to support the former thesis, I adopt the latter interpretation. Tagging the cross-examination "ineffectual" may criticize it as weak, useless, or inefficient but in context may only mean it did not succeed in disturbing the direct testimony. The term "ineffectual" was also used to describe Phillips' services emphasizing lack of success. There, the additional finding of an inartistic, delaying participation by Phillips connotes inefficiency and dims the significance attaching to "ineffectual". I therefore conclude the Commission did not disparage the quality of counsel's services in its decision but rather reiterated counsel's failure to win the case or any part of it. Thus, the entire basis of the Commission's decision as to Committee counsel is this lack of success, which in the opinion is made synonymous with absence of "demonstrable benefit to the estate". Compensation was awarded counsel solely on their representative class status with nothing allowed for services as such.[28]

For three reasons I conclude the SEC allowance to counsel must be modestly increased to accord with substantial evidence and appropriate legal standards. A. Resolving all doubts in favor of the administrative decision pertaining to counsel's services before the Commission, I yet find it erroneous as a standard and contrary to the evidence for SEC to have refused compensation for service in this court. Committee counsel carried the bulk of the burden in this court both by brief and appearance. While not ultimately persuaded by their arguments, I gave them serious consideration and benefited from their presentation. They were competent services of industrious counsel which benefited the estate in the judicial phase by supplying

27. HCAR 11290, pp. 9–10.

28. "The only amounts that were allowed either to Mr. Phillips or to Mr. Boehm represented not compensation for services but compensation for being there * * *". Transcript, April 28, 1953, page 88.

one measurement of the fairness of the proposed plan. As indicated in the Engineers opinion, the enforcement stage of a plan ranks with the approval phase in importance. SEC has so elevated the one as to dwarf the other. B. The purpose of allowing compensation in § 11(e) proceedings is to encourage representation of all interested classes. "[O]nce the management has devised and filed its plan, it is natural that, as a proponent of the plan, it should exert its best efforts toward securing approval. There is thus a strong possibility that opposing groups, unless they are willing to employ separate counsel at their own expense, will not be adequately represented and that as a consequence, the thoroughness of our hearings and our ability to explore all aspects of the plan would be impaired for lack of beneficial contribution such interested persons might otherwise make. * * * Unless there were some assurance that persons who contribute to the development of a plan and otherwise benefit the estate will receive fair compensation, constructive suggestions would be discouraged." So said the SEC in HCAR 7041, Engineers Public Service Company. See also 6 Collier on Bankruptcy, 14th Ed., pp. 4507–4508 and SEC's "Report to Congress on the Study and Investigation of the Work, Activities, Personnel and Functions of Protective and Reorganization Committees", Part VIII, p. 249. This healthy standard SEC failed to follow. Awarding "modest" compensation of $2,000 just for "being there" is not conforming to the mandate of allowing "fair compensation" for competent services of experienced counsel. Should complete sanction be given SEC's "modest" award, the calibre of counsel representing objecting shareholders would so decline as to equate no representation. C. The Commission's opinion is internally inconsist-

ent as to certain allowances. Townsend, Elliott & Munson, representing institutional preference shareholders, confined their services to the Commission phase, did not appear in this court, and opposed a stay of enforcement in the Court of Appeals. Approximately 300 hours comprised the firm's participation. A $5,000 fee was approved plus all expenses. Presentation of an expert witness and his exhibits in opposition to the plan were the compensable services, for which SEC also directly awarded the expert $2,500 plus his expenses. This testimony was the benefit conferred on the estate, the Commission concluded, because it "aided in the analysis and testing of the fairness of the plan." Yet, this firm was just as unsuccessful in its efforts as Committee counsel, and SEC so admits in its decision. Moreover, Committee counsel had duly assumed the representative obligations imposed by Rule U-62 [29] and contested the plan throughout the proceedings to the extent of 2058 hours. The Townsend firm enjoyed the freedoms of private counsel and exercised one in staying out of this court. Commission allows $5,000 for arranging expert testimony and contrasts Committee counsel's failure to present any during the administrative hearing. However, failure of the Townsend firm to give this court the benefit of its services was not viewed as a deficiency nor were Committee counsel's services here considered in fixing their compensation. As in Engineers, so in this instance SEC evinces its conviction factual preparation eclipses legal research. The error inherent in the SEC's fee evaluation is overemphasis of services before the Commission to the practical exclusion of services before the courts. Contrary to SEC's decision, the ball game is not over after the Commission inning.

---

29. Illustrative of the restrictions, those subject to the Rule may not buy or sell any stock or securities of the concerned corporations and have an affirmative obligation to represent the class throughout the proceedings so long as reasonable opportunity of success remains. Individual shareholders may sell their stock, cease participation at any time, and trade in the securities at will.

8. I conclude services of Committee counsel are on a par with those of the Townsend firm in this litigation, and like compensation of $5,000 should be awarded. In reaching this conclusion, I have disregarded as irrelevant Committee counsel's extensive reliance upon their high office overhead expense as justifying award of requested fees.

██ Committee members, through counsel, press their original requests for allowances of $1,000 for the Chairman, $750 for each of the two members, and $1,500 for the Secretary. SEC awarded $250 to each. Approximately six meetings entailing 100 hours were held. Other than this, I am given no details of their individual contributions to the litigation but have pressed upon me their high professional status. No evidence runs counter to the SEC evaluation finding that the Committee services were worth $1,000 in all, and I approve that award.

██ United's objections to compensation of the Committee and its counsel are not well founded. The formation of the Committee is charged as unnecessary because the same counsel were already in the case representing individual clients. However, this overlooks both the salutary effect upon the estate of representation under Rule U–62's stringencies and SEC's encouragement of this type of practice in prior decisions.[30] In its experience, Commission conviction has grown so strong the allowances here awarded counsel and committee were based solely on their status. Impugning the motive of the Committee organizers has no record evidence to support it and runs counter to SEC's findings. The other United objection centers about the Committee's feeble efforts, lack of success and conferral of no benefit upon the estate.

These factors have previously been considered in reaching my prime valuation.

### Cross Objections to Allowances of Satisfied Fee Recipients

██ Committee counsel's brief[31] contains this assertion: "Applying the test previously adopted by the Commission as to the compensation of individual stockholders, Munson's firm [Townsend, Elliott & Munson] was entitled to no compensation." This and other criticism I interpret as an objection to any allowance to the Townsend firm. Since that firm did not appear in the enforcement proceedings here, I do not have an independent basis of evaluating their services. However, the Commission stressed the importance of their representation during the administrative hearings and concluded they conferred some benefit upon the estate. I have no convincing evidence that conclusion is not correct and thereby overrule the objection.

██ Phillips sponsors objections to allowances to United's counsel. The charge is breach of Rule U–62's prohibition of trading in securities of the corporation undergoing reorganization. The Commission considered this accusation and rejected the premise on which it is based, saying:[32] "This contention is without merit since neither United nor its counsel were subject to the Rule in connection with the proceedings on the retirement plan. The only filing by United under the Rule was made in connection with the solicitation by it of proxies to be voted at the 1947 annual meeting of United's stockholders on a resolution approving United's program for future operations as an investment company." Substantial evidence accords with this conclusion. Inherent in Phillips' contention is a reiteration of his firm conviction all of United's proceed-

---

30. New England Power Association, HCAR 8751; Midland Utilities Co., HCAR 8982.

31. Supplemental Memorandum In Behalf Of Application For Allowances By The Preference Stockholders Committee And Its Counsel, May 15, 1953, p. 25.

32. HCAR 11290, p. 6, n. 8.

ings are indivisible parts of one reorganization. Although finding U-62 inapplicable, the Commission did scrutinize the transactions of which Phillips complains. As one of its guiding standards, SEC considered the profits derived from the participants' stock transactions in fixing compensation. If Rule U-62 or other regulatory or statutory prohibition had bound United's counsel and had been violated by improper stock dealings, no fees would have been allowed. Since the Rule did not apply, the stock transactions did not wholly disqualify counsel but reduced their fees by the extent of their stock profits. The transactions here attacked were likened by the Commission to those treated in Electric Power & Light Corporation, HCAR 11175.[33] After full consideration of the record, I agree with the Commission and approve its standard. There was no weakening of the fiduciary obligations of attorneys. Counsel's activities in United stock were casual, generally insignificant, and of varied natures. Some long antedated United's reorganization. Some occurred after the investing public generally had been informed of United's program for compliance with the Holding Company Act. Some were by counsel associated in name, but not in active practice, with the firm or otherwise connected with the case. Some were by investors on behalf of, but then unknown to, counsel. Only two transactions could have resulted in improper profit, and both concerned John J. Burns. The maximum possible profit was $1,600, and the Commission reduced the Burns fee by that amount.[34]

In referring to the briefs and memoranda filed on the investment plan in United's reorganization, Circuit Judge Miller said:[35] "Some of this mass of material, at times repetitious and irrelevant and marred by crimination and recrimination, has confused more than it has clarified the issues." Applied to this fee phase, that description is also regrettably apt. All objections briefed and argued have been carefully considered. Those not specifically discussed and approved have been rejected.

The Order of SEC providing for the payment of $2,000 as a fee and $370.84 reimbursement of expenses to Randolph Phillips is affirmed.

The Order of SEC providing for the payment of a $2,000 fee to John F. Davis, Esq., is affirmed.

The order of SEC relating to Boehm & Fischman; Hays, St. John, Abramson & Schulman; and Kurland & Wolfson is reversed; a payment of a $5,000 fee and $1,690.58 reimbursement of expenses, less any amounts previously received under the SEC Order, should be directed after remand to the SEC.

The Order of SEC relating to the payment of fees and expenses to the three members and secretary of the Preference Stockholders Committee; to Whitman, Ransom, Coulson & Goetz; to Southerland, Berl & Potter; to John J. Burns, Esq.; and to Townsend, Elliott & Munson is affirmed.

An Appendix is attached identifying the principals, their objections, and some details of their activities.

Appropriate orders may be submitted.

33. "In the *Electric* Case, we noted that securities transactions had been effected by a few of the fee claimants in pending cases which in general had been sporadic in character, did not appear to have been based upon the use of inside information and were not part of a concerted scheme to affect the course of the reorganization, that some of the transactions resulted in losses, and that the profits on the other transactions appeared to be relatively trivial in amount in relation both to the fees claimed and to our estimate of the reasonable compensation to be allowed for the services rendered." HCAR 11290, p. 5, n. 7.

34. "As a result, the $5,000 amount which they [Burns and his associate] sought was reduced with the staff recommendation to $3,400 and that recommendation was adopted by the Commission." Tr., April 28, 1953, p. 86.

35. Downing v. S.E.C., D.C.Cir., 203 F.2d 611, 621.

APPENDIX

## A. Claimants Dissatisfied With Their Awards:—

|  | Briefs | Appearances | Hours | Requested Fees | Requested Expenses | Awarded Fees | Awarded Expenses |
|---|---|---|---|---|---|---|---|
| **1.** Boehm & Fischman; Hays, St. John, Abramson & Schulman; Kurland & Wolfson | 4 | SEC and 2 courts | 2058 | $50,000 | $1,690.58 | $2,000 | $1,690.58 |

**Activities:** Appeared before Examiner and the Commission; filed a declaration under Rule U-62; attacked the proposed plan on ten or more separate grounds, most of which the Commission paused to discuss in its opinion; argued for redemption price of $55; prepared and submitted a proposal for a voluntary exchange of stock; cross-examined witnesses; filed a brief; divided oral argument between Mr. Boehm and Mr. Heilbron; filed objections and opposed enforcement in District Court orally and by brief; noticed appeal and secured transmission of record to Court of Appeals; applied for, argued and briefed stay of enforcement.

|  | Appearances | Hours | Requested Fees | Requested Expenses | Awarded Fees | Awarded Expenses |
|---|---|---|---|---|---|---|
| **2.** Randolph Phillips | SEC and 2 courts | 2300 | $46,000 | $42,201.14 |  |  |

For activities from Dec. 1942 to Feb. 1950

|  | Hours | Fees | Expenses | Fees | Expenses |
|---|---|---|---|---|---|
|  | 300 re retirement plan | $6,000 | $370.84 excluding '43, '44, '47 proxy fights and pertaining only to the retirement plan | $2,000 | $370.84 |

**Activities:** Appeared before the Commission, opposed United's plan, prepared, presented and testified for his own plan for retiring the preferred at the liquidation price plus certain other rights; cross-examined witnesses; filed briefs, prepared, filed, and argued in the District Court a motion for change of venue and a brief opposing enforcement; moved for, argued and briefed stay in Court of Appeals.

## B. Contented Claimants Whose Awards Are Objectionable To Other Applicants:—

|  | Objector | Reasons | Awarded | Hours |
|---|---|---|---|---|
| **1.** Randolph Phillips | United | a) Breach of fid. duty b) Obstructed plan c) Non-lawyer | $2,000 ($370.84) | Approx. 300 re retirement Over 1300 in all |
| **2.** John F. Davis | United | a) No benefit to estate | $2,000 | Approx. 20 days |
| **3.** Boehm & Fischman, etc. | United | a) Improper motives in forming Com'ee b) Comm. unnecessary c) No benefit | $2,000 | 2058 |
| **4.** The Three Members and Secretary of Pref. Comm. | United | a) Strangers to United b) No services | $250 each | Approx. 100 hours |
| **5.** Whitman, Ransom, etc. | Phillips | a) Breach of U-62 & fiduciary duties | $55,000 ($927.53) | 931¾—Partners 1541¾—Associates |
| **6.** Southerland, Berl, etc. | Phillips | a) Breach of U-62 & fiduciary duties | $2,000 $472.39) | Not specified |
| **7.** John J. Burns | Phillips | a) Breach of U-62 & fiduciary duties | $3,400 | Not specified |
| **8.** Townsend, Elliott & Munson | Boehm | a) No benefit; indiv. client b) Ended service after Comm. phase | $5,000 ($793.35) | Approx. 300—Mostly senior member |